## In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-2616

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAYMIE T. MOUNT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 10 CR 164—**Jane E. Magnus-Stinson**, *Judge.*

ARGUED FEBRUARY 29, 2012—DECIDED APRIL 12, 2012

Before BAUER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Jaymie Mount disappeared while on release awaiting trial on a charge of possession of a gun by a felon, in violation of 18 U.S.C. § 922(g)(1). He was captured nearly three months later and pleaded guilty two weeks before his trial was set to begin. At sentencing, the district court granted him a two-level reduction in his offense level under the U.S. Sentencing Guidelines for acceptance of responsibility. See U.S.S.G.

§ 3E1.1(a). In keeping with the plea agreement, the gov-
ernment moved for Mount to receive an additional one-
level reduction, because it was satisfied that he had
given prosecutors timely notice of his intention to plead
guilty. See *id.* § 3E1.1(b). The district court denied that
motion, however, citing Mount's flight as its reason.
Mount appeals, arguing that the additional one-level
reduction is mandatory once the government determines
that the criteria spelled out in § 3E1.1(b) are satisfied
and it makes the necessary motion. We conclude that
Mount is correct, and we thus remand for resentencing.

**I**

In mid-2010 the police received reports that Mount,
who had a felony conviction on his record, had dis-
charged firearms on several occasions and had been
seen carrying an AK-47 assault weapon. They decided to
investigate and obtained a search warrant for his home.
The search turned up eight firearms, which led to Mount's
being charged by complaint in federal court with the
offense of possession of a gun by a felon. See 18 U.S.C.
§ 922(g)(1). He was then released on his own recog-
nizance on the condition that he stay in a residential
facility operated by Volunteers of America. Mount com-
plied for a time, but five months later, after electing
to waive indictment and notifying the district court that
he would plead guilty to an information, Mount left
the facility (ostensibly to visit his grandmother) and
did not return. A warrant was issued for his arrest.

Nearly three months later, the Marshals Service
tracked him down. His release was revoked, and his

retained lawyers were permitted to withdraw based on a breakdown in communication with Mount. The district court appointed substitute counsel and set trial for June 20, 2011. At a status conference in May, the parties told the judge that they were in the process of negotiating a plea agreement. At that point, the Assistant U.S. Attorney was threatening to add a charge for failure to appear, but that never happened. Instead, just as he had promised before he became a fugitive, Mount agreed on June 6 to plead guilty to the pending information charging him with the § 922(g)(1) violation. This was two days before the final pretrial conference was to occur, and two weeks before the scheduled trial date. The plea agreement represents that Mount had "timely notified the government of his intention to enter a plea of guilty, thereby permitting the government and the court to allocate their resources efficiently." On that basis the government promised to move for an additional one-level reduction in Mount's offense level under U.S.S.G. § 3E1.1(b) if the district court decided that he was entitled to the two-level reduction for acceptance of responsibility provided by § 3E1.1(a).

At sentencing, the district court did award Mount the two-level reduction, and so, in keeping with the plea agreement, the AUSA moved for the third level under § 3E1.1(b). When pressed, however, the AUSA hedged a bit when explaining the reason for doing so:

THE COURT: And what is the basis for that motion?

[AUSA]: Your Honor, we could have filed another felony in the case, and that was one of our points

of negotiation with him, which I think for a time, he didn't believe we could file based on a walk-away from the [Volunteers of America residential facility]. But case law showed that we could, and that would have—that would have made an additional five-year penalty for him to be at least facing. I don't know what would have happened ultimately, but he did agree to go ahead and continue through with the resolution that had been started really by his prior lawyer; and so, saving the Government some resources in having to call [Volunteers of America] people and having to do an additional and probably separate trial because probably that wouldn't have come in in a felon in possession trial.

THE COURT: Okay. So the trial you were avoiding preparing for was on a different case, not this case.

[AUSA]: A potential different case.

After this exchange, the court rejected the additional reduction under § 3E1.1(b) with this explanation:

[T]he court is going to deny the motion for an additional level decrease, because the sentencing guideline calls for the efficient allocation of resources. And when Mr. Mount walked away, he is getting a break with the charge not being filed. And the Government has agreed to that as part of the plea. But also, having to use the United States marshal service to apprehend him is not an efficient use of the Government's resources.

Without the additional reduction in offense level, the court concluded that Mount's offense level was 26 and

his criminal history category was IV. This yielded an advisory guideline range of 92 to 115 months. The court chose a sentence of 100 months, explaining that Mount's flight warranted a term long enough to promote his respect for the law and that his § 922(g)(1) offense was serious and required protection of the public.

## II

On appeal, Mount argues that the court erred when it took the position that it had the power to refuse to reduce his offense level under § 3E1.1(b). In his view, the additional adjustment is mandatory if the government moves for it and the other requirements of the provision are met. The government counters with the well-known fact that the guidelines are advisory. This means, it contends, that the court may deny a motion under § 3E1.1(b) for any of a number of reasons. Recognizing that Mount's guideline range would have been 84 to 105 months had the extra level been awarded, the government does not argue that any possible error is harmless. Nor does it argue that review should be for plain error since Mount did not specifically object to the § 3E1.1(b) ruling.

Our starting point must be with the text of the guideline. *United States v. Arnaout,* 431 F.3d 994, 1001 (7th Cir. 2005). Since the 2003 amendment to § 3E1.1, the text has read as follows:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

The question is whether, in cases where the court has determined that (1) the defendant qualifies for a decrease under subsection (a), (2) the defendant's offense level is greater than 16 before the operation of subsection (a), and (3) the government makes the motion described in subsection (b), the additional one-level downward adjustment remains discretionary with the court, or if—strictly as a matter of properly computing the advisory guideline range—it is mandatory. Obviously, once the advisory guideline range is determined, the court retains discretion to apply the factors outlined in 18 U.S.C. § 3553(a) to choose a proper sentence. But it must begin, as the Supreme Court has reminded us, with the right reference point from the guidelines. See, *e.g., Gall v. United States,* 552 U.S. 38, 49 (2007).

We have not had occasion squarely to address this question in the past. The government argues that our decision in *United States v. Anderson,* 604 F.3d 997 (7th Cir.

2010), implicitly resolves the issue in its favor, but we see important distinctions between the present case and *Anderson.* Critically, in *Anderson* the government *refused* to move for the additional reduction, despite a promise to do so in the plea agreement. In reviewing for plain error the defendant's claim that the agreement had been breached, we commented that affirming the sentence would not create a manifest miscarriage of justice because the sentencing judge "would have exercised his discretion to avoid awarding Anderson the benefits of § 3E1.1(b)." *Id.* at 998, 1002-03. That is a thin reed, we think, for the government's position. The defendant had failed to object when the prosecutor did not move for the third acceptance point. *Id.* at 1000. In discussing whether that omission might have been strategic, which would have implied that the issue was not just forfeited, but actually waived, the court speculated that defense counsel might have guessed that an objection "would not have advanced Anderson's cause by much" because he had waited until the fourth day of trial to accept a two-week-old plea proposal and "may have anticipated that the district court would also reach this reasonable conclusion." *Id.* at 1002.

The government reads that passage as authority for the proposition that whether to award the additional one level is up to the court, but that is not what the court said. Indeed, there is a much more straightforward reading: that the panel recognized that the government itself was well within its rights on those facts to refuse to make the motion, since the defendant did not live up to his end of the bargain, and acceptance of

a plea four days into trial does not save anyone any time. It is also possible that the court in *Anderson* was simply acknowledging the plausibility of the government's contention that defense counsel "stayed quiet because he sought to divert the court's attention from whether any § 3E1.1 adjustment for acceptance of responsibility was appropriate." *Anderson,* 604 F.3d at 1001. Anderson's plea agreement, like Mount's, made the government's promise to move for a third point contingent on the district court's approval of the first two points. *Id.* at 999. Given that, the court's discussion of the sentencing judge's likely reaction to a claim of breach might better be read not as saying that the judge had discretion to deny the subsection (b) motion, but instead as saying that the judge might have reacted to a quibble over the third point by questioning whether any adjustment at all for acceptance was warranted. Finally, it was clear in *Anderson* that this dispute was immaterial, because the sentencing court there made it clear that it was prepared to impose the 10-year statutory maximum no matter what. *Id.* at 1002-03.

The government also believes that *United States v. Leahy,* 464 F.3d 773 (7th Cir. 2006), supports its position. There the district court refused to give defendant Duff (one of several co-defendants) any reduction at all for acceptance of responsibility. After citing *Leahy* for the well-worn proposition that a reduction under § 3E1.1 does not follow automatically from a guilty plea, the government quotes this sentence from the opinion: "Guideline § 3E1.1 provides that a court is to give a two-point reduction if the defendant 'clearly demonstrates

acceptance of responsibility for his offense,' and that a court may give an additional point if the acceptance is timely." *Id.* at 791. But the government assumes that the word "may" was meant here to signal untrammeled discretion. That word, however, would be just as appropriate if the word "may" was meant only to signal that the extra point would not always be forthcoming, because the government does not always make the necessary motion. Moreover, Duff was sentenced under the 1998 version of § 3E1.1, which did not make the third point contingent on a government motion. In short, we do not find either *Anderson* or *Leahy* to be of too much help here.

For his part, Mount refers us to *United States v. Deberry*, 576 F.3d 708 (7th Cir. 2009). Although *Deberry* does not explicitly endorse Mount's position on subsection (b), it provides some support for it. In *Deberry* the issue was whether the government could refuse to move for a third acceptance point if the defendant would not agree to waive his right to appeal. *Id.* at 711. Stressing the breadth of the government's discretion on this point, we said yes, noting that the prosecutor is entitled to withhold a subsection (b) motion so long as that decision does not rest on an invidious ground or on a reason unrelated to a legitimate governmental objective. *Id.* The opinion observed that "[s]ubsection (b) confers an entitlement *on the government*: if it wants to give the defendant additional credit for acceptance of responsibility, perhaps to induce additional cooperation, and can satisfy the criteria in the subsection, it can file a motion and the defendant *will* get the additional

one-level reduction in his offense level, though again this may not determine his actual sentence." *Id.* at 710 (emphasis in original). The government responds to this by accusing Mount of placing undue emphasis on the word "will" in this passage, but it does not explain why its reading of *Deberry* is preferable. Mount counters by noting that it was this court that italicized the word "will," not Mount.

These tea leaves are a little too cryptic for us. In the end, with one important exception that we discuss at the end of this opinion, this is all there is. Returning to the language of the guideline, we come back to the point we noted earlier: since 2003 there have been essentially three requirements under the current text of § 3E1.1(b): (1) a decision that the defendant qualifies for the first two levels under subpart (a); (2) an offense level of 16 or greater before subpart (a) is applied; and (3) a government motion certifying assistance through a timely plea. Before the 2003 amendment to the guideline, the third of those criteria did not exist. What did not change was the command to "decrease the offense level by 1 additional level" if all of the subsection (b) conditions were met. The language just quoted, we have held, is mandatory: subsection (b) "directs rather than allows the sentencing court to reduce the defendant's offense level if the qualifying conditions are met." *United States v. Townsend*, 73 F.3d 747, 755 (7th Cir. 1996). And we are not alone. Every circuit to consider the matter has also adopted this reading of the pre-amendment version of subsection (b). See, *e.g., United States v. Rood*, 281 F.3d 353, 357 (2d Cir. 2002); *United States v. Rice*, 184 F.3d 740, 742 (8th

Cir. 1999); *United States v. Tello,* 9 F.3d 1119, 1124 (5th Cir. 1993).

The 2003 amendment left intact the language that, according to *Townsend,* gives § 3E1.1(b) its mandatory character, once the necessary conditions are satisfied. (Indeed, this is how the Guidelines normally work: once the court finds that a certain quantity of drugs was involved, for example, it has no discretion to assign an offense level that corresponds to a different quantity. From that perspective, Mount's argument is a straightforward one.) In our view, that means that the correct interpretation of the current version of the guideline is that it retains its nondiscretionary character. If the conditions are satisfied, the one-level downward adjustment must be awarded. This reading is consistent with the reading that is given to U.S.S.G. § 3C1.1, which tells sentencing courts to "increase the offense level by 2 levels" if the criteria for finding obstruction of justice are met. This text is understood to leave the sentencing court with no discretion as it calculates the advisory guideline offense level. *United States v. Zaragoza,* 123 F.3d 472, 485-86 (7th Cir. 1997). Here again, all of the other circuits take the same position. See, *e.g., Hall v. United States,* 46 F.3d 855, 859 (8th Cir. 1995); *United States v. Velgar-Vivero,* 8 F.3d 236, 242 (5th Cir. 1993); *United States v. Friedman,* 998 F.2d 53, 58 (2d Cir. 1993). Obstruction of justice is in many ways the flip side of acceptance of responsibility, and so it is not surprising that these two guidelines should be treated in the same way.

We acknowledge that § 3E1.1(b) also mentions the efficient allocation of the court's resources, and so one

might wonder whether that fact is enough to give the court discretion over the one-level adjustment even after the express criteria of the guideline are satisfied. Aside from the fact that the court in Mount's case was not worried about its own resources—it spoke only of the wasteful use of the Marshals Service, which is an agency within the Department of Justice whose interests ought to be addressed by the U.S. Attorney's Office—this fact fails to take into account the language that Congress chose for the 2003 amendment to the guidelines (and it was Congress that adopted this particular language, not the Sentencing Commission). See Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, Title IV, § 401(g), 117 Stat. 650.

Although we would defer to the application notes to the guideline if they shed some light on this, see *Stinson v. United States,* 508 U.S. 36, 42-43 (1993), they are inconclusive at best. On the one hand, Application Note 5 says that a sentencing judge is in a "unique position" to evaluate acceptance of responsibility, and so the judge's determination is entitled to "great deference." But that point applies with full force to the court's assessment of the defendant's eligibility for the two-level adjustment under § 3E1.1(a), which is a prerequisite for the additional one level. The Application Note is silent about subpart (b). Application Note 6 is no better. It clarifies that a sentencing judge is forbidden to give the subsection (b) reduction without a government motion, but it says nothing about what the judge may or may not do once the government makes its motion.

The exception we noted is a case from the Fifth Circuit that neither party called to our attention: *United States v. Williamson,* 598 F.3d 227 (5th Cir. 2010). In that case, like Mount's, defendant Williamson pleaded guilty under a written plea agreement. His presentence report recommended the two-level reduction for acceptance of responsibility under § 3E1.1(a), and pursuant to his plea agreement, the government moved for the additional one level under § 3E1.1(b). The district court awarded only the two-level reduction and, in effect, denied the government's motion. *Id.* at 228. The Fifth Circuit concluded that the district court was entitled to take this action. It gave three reasons for this conclusion. First, it asserted that no language in subsection (b) can be read to *deny* the sentencing judge a role in deciding whether the guilty plea was entered in time to allow the government to avoid preparing for trial. *Id.* at 229. Second, it emphasized that Application Note 5 (which we have already found not particularly useful here) states that the sentencing court is in a unique position to assess acceptance of responsibility and that Application Note 6 (which we similarly have found inconclusive) uses "permissive language" when it says that "an adjustment under subsection (b) *may* only be granted" when the government makes a motion. *Id.* at 229-30. Third, *Williamson* cites cases from the Second and Eighth Circuits that do not directly address the issue, but which the Fifth Circuit saw as suggesting that both the government and the district court have a role in awarding the § 3E1.1(b) reduction. *Id.* at 230 (citing *United States v. Stacey,* 531 F.3d 565, 568 (8th Cir.

2008), and *United States v. Sloley,* 464 F.3d 355, 360 (2d Cir. 2006)).

We are not persuaded by the reasoning in *Williamson.* As we have explained at length, § 3E1.1(b) uses mandatory language in instructing the district court how to calculate the offense level when the government has made the necessary motion. This, in our view, is a textual argument that cuts against the Fifth Circuit's approach. Although we are not charged with maintaining consistency in the Fifth Circuit's law, we note that *Williamson* is in considerable tension with other cases from that circuit, including *Tello,* 9 F.3d at 1124, and *Velgar-Vivero,* 8 F.3d at 242. We have already explained why we do not regard Application Notes 5 and 6 as a source of support for the *Williamson* result; there is no need to repeat that discussion here. Finally, *Williamson* seems to proceed from the mistaken premise that if the district court is directed by the guidelines to compute a certain offense level, then that is the level within which the defendant must be sentenced. We would have thought that seven years after *United States v. Booker,* 543 U.S. 220 (2005), was decided, this fallacy would have been put to rest. Over and over, the Supreme Court has emphasized that district courts have discretion over sentences, so long as they begin with a proper calculation of the recommended sentencing range under the guidelines and they then take proper account of the sentencing considerations outlined in § 3553(a). See, *e.g., Spears v. United States,* 555 U.S. 261, 263 (2009); *Kimbrough v. United States,* 552 U.S. 85, 91 (2007); *Gall, supra.* Even within the more limited context of guidelines computations, the district

judge is responsible for the most important input into the acceptance of responsibility decision: whether the defendant is entitled to the first two levels pursuant to § 3E1.1(a).

For what it is worth, we also think that the Fifth Circuit has overstated the holdings in *Sloley* and *Stacey.* In *Sloley* the defendant argued that the government is obliged to file a motion whenever the sentencing court grants the subsection (a) two-level decrease. *Sloley,* 464 F.3d at 359. The Second Circuit concluded, in a ruling with which we have no quarrel, that in line with the plain language of § 3E1.1(b), the government motion is discretionary and is a prerequisite to the additional one-level decrease. *Id.* It explained that § 3E1.1 "contemplates situations in which a court may find acceptance of responsibility while the government prosecutor may not" and that "Congress' aim in amending [§ 3E1.1(b)] makes plain that under the new version both the court and the government must be satisfied that the acceptance of responsibility is genuine." *Id.* at 359-60. This explanation is equally consistent with both the result in *Williamson* and Mount's position here. It does not foreclose Mount's view that the sentencing court decides whether to award a reduction under § 3E1.1(a), but once it does, it may not insert itself again into the matter to evaluate the government's motion under § 3E1.1(b).

*Stacey* also provides little support for the Fifth Circuit's position. There, the district court awarded the defendant a reduction under subsection (a), but it said that it was denying the government's motion for a subsection (b) reduction "because of the fleeing and the other matter."

*Stacey,* 531 F.3d at 566-67. On appeal the Eighth Circuit noted that when all of the conditions of § 3E1.1(b) are met, " 'the [sentencing] court has no discretion to deny the extra one-level reduction.' " *Id.* at 567 (quoting *Rice,* 184 F.3d at 742). The Eighth Circuit remanded the case to the district court for resentencing, explaining that in denying the government's motion the district court had failed to "determine whether a reduction for acceptance of responsibility is factually appropriate." *Id.* at 568. The Fifth Circuit thought that *Stacey* might imply that the district court may veto the government's motion, but we find this potential reading to be inconsistent with the remainder of the court's discussion. *Id.* at 567. Indeed, we think that the Eighth Circuit's statement in *Stacey* is so clear that there is already a conflict in the circuits on this point enough to obviate the need for a circulation in this court under Circuit Rule 40(e).

What we have said thus far should be enough to dispose of the government's argument that Mount's approach would make the guidelines mandatory rather than advisory. Nonsense. Mount's approach deals only with the correct computation of the advisory guideline range. Nothing in his argument touches on the district court's duty to evaluate the outcome of that computation and then to impose (within statutory minima and maxima) a reasonable sentence.

### III

We conclude that the district court erred here by failing to grant Mount the one-level reduction under

§ 3E1.1(b) that was triggered by the government's motion. His advisory guideline range was affected by that error, and we cannot say on this record that the error was harmless. We do note, however, that the district court would have had the authority to select a higher sentence based on its concern about Mount's decision to go on the lam for several months. We express no opinion about the reasonableness of any final sentence the district court may select.

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.