**UNITED STATES of America,
Appellee,**

v.

**Wayne Anthony SHAND, Defendant–
Appellant.**

**Docket No. 13–227–cr.**

United States Court of Appeals,
Second Circuit.

Argued: Dec. 12, 2013.

Decided: Jan. 13, 2014.

Avrom Robin, Law Offices of London &
Robin, New York, NY, for Defendant–Appellant Wayne Anthony Shand.

Margaret E. Gandy, Assistant United
States Attorney (David C. James, Assistant United States Attorney, on the brief),
for Loretta E. Lynch, United States Attorney for the Eastern District of New York,
Brooklyn, NY, for Appellee United States
of America.

Before: POOLER, PARKER, and
WESLEY, Circuit Judges.

PER CURIAM.

Wayne Anthony Shand is a Jamaican
citizen with an extensive history of criminals arrests and convictions in the United
States. As a result of his criminal activities, Shand was removed in 2001. Sometime thereafter—but prior to a 2004 arrest
in Louisiana—Shand illegally reentered
the United States.

In 2011, Shand was arrested after he
produced a fake identification card at a
traffic stop. After Shand's arrest, the police conducted a routine records check,
which indicated that he had been removed.
Consultation with Immigration and Customs Enforcement (ICE) officials revealed
that Shand had not obtained authorization
to reenter the United States. He was
subsequently indicted for being "found in
the United States," pursuant to 8 U.S.C.
§ 1326.

After the standard motion practice and
discovery, the Government offered Shand
a plea agreement pursuant to the Eastern
District of New York's newly-instituted
"Fast Track" program; this offer was
based in part on the mistaken belief that
Shand had reentered in 2011 (rendering
much of his criminal history irrelevant as

untimely).[1] Shand accepted the opportunity to participate in the program, stipulated to his eligibility for removal, and waived any right to seek protection from removal.

During a presentence investigation, the Probation Office discovered that Shand had reentered the United States earlier than previously believed. Because Shand's reentry occurred in 2004 rather than 2011, the Probation Office included more of his prior criminal conduct in his Guidelines calculation. The Probation Office's presentence investigation report (PSR) estimated that Shand's criminal history category was VI and that his offense level was 21 (yielding a Guidelines range of 77 to 96 months). The PSR also noted that the Government had agreed to seek a four-point reduction pursuant to § 5K3.1; such a departure "would result in a total offense level of 17 and a criminal history category of VI, which results in an advisory guideline range of 51 to 63 months." PSR ¶ 76.

The Government briefly had second thoughts based on Shand's previously-undisclosed significant criminal history (one of several factors making him an unlikely candidate for a Fast Track motion), but it ultimately moved for a full four-point deduction pursuant to § 5K3.1. Nevertheless, the district court (Dora L. Irizarry, *Judge*) denied the Government's motion and calculated Shand's Guidelines range based on the (otherwise-unchallenged) offense level of 21. Shand advanced a number of arguments at sentencing. He noted that all of his criminal convictions occurred when he was between 20 and 26 years old and that he was now a 39–year–old father

of four and had "changed course" in his life. The district court sentenced Shand to a low-end Guidelines sentence of 77 months' imprisonment.

## Discussion

Shand appeals, alleging that the district court lacked the authority to deny the Government's motion for a departure pursuant to U.S.S.G. § 5K3.1. In support of this contention, he relies on the lack of any case law to the contrary, analogizes to the "acceptance of responsibility" reduction under U.S.S.G. § 3E1.1(b), and argues that the policy rationale underlying the § 5K3.1 reduction indicates that the sole discretion for its application should rest with the Government. Because the plain text of § 5K3.1 forecloses Shand's arguments, we hold that a district court may, but need not, depart downward upon an appropriate motion by the Government under U.S.S.G. § 5K3.1.[2]

We begin our inquiry by examining the text of U.S.S.G. § 5K3.1. A policy statement adopted by the Sentencing Commission pursuant to the PROTECT Act of 2003 (Pub.L.108–21), § 5K3.1 indicates:

> Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

The permissive "may" forecloses Shand's argument that the district court "must" depart downward upon a Government motion. *See, e.g., United States v. Doe,* 996

---

1. The plea agreement assumed that Shand fell into Criminal History Category III and calculated a Guidelines offense level of 16, which accounted for a reduction of four points based on a Government motion for a departure under an early disposition program, as permitted by U.S.S.G. § 5K3.1.

2. The parties contest the standard of review, but it is not determinative. We therefore assume that the defendant preserved his objections and review *de novo*.

**716**

F.2d 606, 607 (2d Cir.1993) (*per curiam*). As this Court has recognized, the inclusion of the word "may" suggests that the sentencing judge retains discretion over whether to grant such a departure. *See, e.g., United States v. Fernandez,* 127 F.3d 277, 286 (2d Cir.1997); *United States v. Huerta,* 878 F.2d 89, 92 (2d Cir.1989).

Despite the plain meaning of the text, Shand urges us to consider § 5K3.1 in light of § 3E1.1(b). Some courts have held that § 3E1.1(b) requires a district court to decrease the offense level for acceptance of responsibility upon the Government's motion. *See United States v. Mount,* 675 F.3d 1052, 1059 (7th Cir.2012). In *Mount,* the Seventh Circuit largely focused its analysis on the text of § 3E1.1(b). *See id.* at 1054. Unlike § 5K3.1, the Guidelines section analyzed in *Mount* commanded the district court through the imperative "decrease," without any permissive "may."[3] The clear difference in the text of the two sections renders the Seventh Circuit's analysis of § 3E1.1(b) irrelevant to our interpretation of § 5K3.1.

Shand's policy arguments regarding the conservation of prosecutorial resources are unpersuasive for a number of reasons— most importantly, they could only affect our analysis in the presence of a textual ambiguity. Here, the language is unambiguously clear. Whether or not § 5K3.1 was designed to conserve resources at the United States Attorneys' Offices, it vests sole discretion to grant departures on Government motions with district court judges.

Finally, Shand's additional arguments— including as to the substantive reasonableness of his sentence—are unpersuasive. In this case, and particularly in light of Shand's long criminal history, the low-end Guidelines sentence issued by the district court, though seemingly harsh, does not constitute an "exceptional case[ ] where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera,* 550 F.3d 180, 189 (2d Cir.2008) (*en Banc*) (quoting *United States v. Rigas,* 490 F.3d 208, 238 (2d Cir.2007)).

### Conclusion

We have considered Shand's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**3.** U.S.S.G. § 3E1.1(b) provides:
If the defendant qualifies for a decrease under subsection (a), ... and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.