**13-227-cr**
*United States of America v. Wayne Anthony Shand*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term, 2013

(Argued: December 12, 2013     Decided: January 13, 2014)

Docket No. 13-227-cr

———————

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

WAYNE ANTHONY SHAND,

*Defendant-Appellant*.

———————

Before:

POOLER, PARKER, and WESLEY, *Circuit Judges*.

———————

Wayne Anthony Shand appeals his sentence of seventy-seven months' imprisonment following his criminal conviction, pursuant to a guilty plea, for illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). Before the district court (Dora L. Irizarry, *Judge*) the Government moved,

1

pursuant to its fast-track program, for a four-level downward departure of Shand's United States Sentencing Guidelines range. The district court denied the motion and calculated Shand's Guidelines range without the departure. Shand alleges that U.S.S.G. § 5K3.1 requires district courts to depart pursuant to an appropriate Government motion. We disagree and therefore AFFIRM Shand's sentence.

---

AVROM ROBIN, Law Offices of London & Robin, New York, NY, *for Defendant-Appellant Wayne Anthony Shand*.

MARGARET E. GANDY, Assistant United States Attorney (David C. James, Assistant United States Attorney, *on the brief*), for Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee United States of America*.

---

PER CURIAM:

Wayne Anthony Shand is a Jamaican citizen with an extensive history of criminals arrests and convictions in the United States. As a result of his criminal activities, Shand was removed in 2001. Sometime thereafter – but prior to a 2004 arrest in Louisiana – Shand illegally reentered the United States.

In 2011, Shand was arrested after he produced a fake identification card at a traffic stop. After Shand's arrest, the police conducted a routine records check, which indicated that he had been removed. Consultation with Immigration and Customs Enforcement (ICE) officials revealed that Shand had not obtained

2

authorization to reenter the United States.  He was subsequently indicted for being "found in the United States," pursuant to 8 U.S.C. § 1326.

After the standard motion practice and discovery, the Government offered Shand a plea agreement pursuant to the Eastern District of New York's newly-instituted "Fast Track" program; this offer was based in part on the mistaken belief that Shand had reentered in 2011 (rendering much of his criminal history irrelevant as untimely).[1]  Shand accepted the opportunity to participate in the program, stipulated to his eligibility for removal, and waived any right to seek protection from removal.

During a presentence investigation, the Probation Office discovered that Shand had reentered the United States earlier than previously believed.  Because Shand's reentry occurred in 2004 rather than 2011, the Probation Office included more of his prior criminal conduct in his Guidelines calculation.  The Probation Office's presentence investigation report (PSR) estimated that Shand's criminal history category was VI and that his offense level was 21 (yielding a Guidelines

---

[1] The plea agreement assumed that Shand fell into Criminal History Category III and calculated a Guidelines offense level of 16, which accounted for a reduction of four points based on a Government motion for a departure under an early disposition program, as permitted by U.S.S.G. § 5K3.1.

range of 77 to 96 months).  The PSR also noted that the Government had agreed to seek a four-point reduction pursuant to § 5K3.1; such a departure "would result in a total offense level of 17 and a criminal history category of VI, which results in an advisory guideline range of 51 to 63 months."  PSR ¶ 76.

The Government briefly had second thoughts based on Shand's previously-undisclosed significant criminal history (one of several factors making him an unlikely candidate for a Fast Track motion), but it ultimately moved for a full four-point deduction pursuant to § 5K3.1.  Nevertheless, the district court (Dora L. Irizarry, *Judge*) denied the Government's motion and calculated Shand's Guidelines range based on the (otherwise-unchallenged) offense level of 21.  Shand advanced a number of arguments at sentencing.  He noted that all of his criminal convictions occurred when he was between 20 and 26 years old and that he was now a 39-year-old father of four and had "changed course" in his life.  The district court sentenced Shand to a low-end Guidelines sentence of 77 months' imprisonment.

## Discussion

Shand appeals, alleging that the district court lacked the authority to deny the Government's motion for a departure pursuant to U.S.S.G. § 5K3.1.  In

4

support of this contention, he relies on the lack of any case law to the contrary,

analogizes to the "acceptance of responsibility" reduction under U.S.S.G.

§ 3E1.1(b), and argues that the policy rationale underlying the § 5K3.1 reduction

indicates that the sole discretion for its application should rest with the

Government.  Because the plain text of § 5K3.1 forecloses Shand's arguments, we

hold that a district court may, but need not, depart downward upon an

appropriate motion by the Government under U.S.S.G. § 5K3.1.[2]

We begin our inquiry by examining the text of U.S.S.G. § 5K3.1.  A policy

statement adopted by the Sentencing Commission pursuant to the PROTECT Act

of 2003 (Pub. L. 108-21), § 5K3.1 indicates:

> Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

The permissive "may" forecloses Shand's argument that the district court "must"

depart downward upon a Government motion.  *See, e.g., United States v. Doe*, 996

F.2d 606, 607 (2d Cir. 1993) (*per curiam*).  As this Court has recognized, the

inclusion of the word "may" suggests that the sentencing judge retains discretion

---

[2] The parties contest the standard of review, but it is not determinative.  We therefore assume that the defendant preserved his objections and review *de novo*.

over whether to grant such a departure.  *See, e.g., United States v. Fernandez*, 127

F.3d 277, 286 (2d Cir. 1997); *United States v. Huerta*, 878 F.2d 89, 92 (2d Cir. 1989).

Despite the plain meaning of the text, Shand urges us to consider § 5K3.1 in

light of § 3E1.1(b).  Some courts have held that § 3E1.1(b) requires a district court

to decrease the offense level for acceptance of responsibility upon the

Government's motion.  *See United States v. Mount*, 675 F.3d 1052, 1059 (7th Cir.

2012).  In *Mount*, the Seventh Circuit largely focused its analysis on the text of

§ 3E1.1(b).  *See id.* at 1054.  Unlike § 5K3.1, the Guidelines section analyzed in

*Mount* commanded the district court through the imperative "decrease," without

any permissive "may."[3]  The clear difference in the text of the two sections

renders the Seventh Circuit's analysis of § 3E1.1(b) irrelevant to our

interpretation of § 5K3.1.

---

[3] U.S.S.G. § 3E1.1(b) provides:

> If the defendant qualifies for a decrease under subsection (a), . . . and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Shand's policy arguments regarding the conservation of prosecutorial resources are unpersuasive for a number of reasons – most importantly, they could only affect our analysis in the presence of a textual ambiguity. Here, the language is unambiguously clear. Whether or not § 5K3.1 was designed to conserve resources at the United States Attorneys' Offices, it vests sole discretion to grant departures on Government motions with district court judges.

Finally, Shand's additional arguments – including as to the substantive reasonableness of his sentence – are unpersuasive. In this case, and particularly in light of Shand's long criminal history, the low-end Guidelines sentence issued by the district court, though seemingly harsh, does not constitute an "exceptional case[] where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)).

## Conclusion

We have considered Shand's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.