# United States Court of Appeals
## For the First Circuit

No. 16-1700

UNITED STATES OF AMERICA,

Appellee,

v.

JULIO CUETO-NÚÑEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Arza Feldman, Steven A. Feldman, and Feldman and Feldman, on brief for appellant.
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, on brief for appellee.

August 25, 2017

**BARRON**, **Circuit Judge**.  Julio Cueto Núñez pled guilty to one count of attempting to enter the United States after previously having been removed from the United States due to an aggravated felony, in violation of 8 U.S.C. § 1326(b)(2).  Cueto was sentenced to a 57-month term of imprisonment, followed by a 3-year term of supervised release, subject to thirteen so-called "standard" conditions.  Cueto now challenges a number of different aspects of his sentence.  We affirm.

## I.

Cueto, a citizen of the Dominican Republic, was removed from the United States in 2010, following his convictions for several offenses including robbery and possession of a weapon without a license in the Superior Court of San Juan, Puerto Rico. More than five years later, on November 8, 2015, a vessel with Cueto (along with sixty other people) on board was apprehended by the United States Coast Guard.  Cueto was then transferred into the custody of the United States Border Patrol.

On November 12, 2015, Cueto was charged with one count of violating 8 U.S.C. § 1326(b)(2), a statute that prohibits an "alien previously removed from the United States subsequent to a conviction for an aggravated felony" from "knowingly and intentionally attempt[ing] to enter the United States" without first having obtained the consent of the Attorney General or the Secretary of Homeland Security "to reapply for admission into the

United States." Id. On February 16, 2016, Cueto waived the right to an indictment and, the same day, pled guilty to a one-count information, pursuant to a plea agreement.

Cueto's plea agreement set forth his base offense level under the United States Sentencing Guidelines as eight, pursuant to U.S.S.G. § 2L1.2(a). The parties then recommended the following adjustments to this proposed base offense level: first, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), a sixteen-point upward adjustment because Cueto was previously removed after a conviction for a crime of violence; second, pursuant to U.S.S.G. § 3E1.1(a) and (b), a three-point downward adjustment for acceptance of responsibility; and third, pursuant to U.S.S.G. § 5K3.1, a two-point downward adjustment because of Cueto's participation in a "fast-track" early disposition program. Thus, the total offense level recommended to the District Court by the parties in the plea agreement was nineteen. The plea agreement did not, however, state Cueto's criminal history category. Instead, the plea agreement set forth a table of recommended sentencing ranges based on Cueto's proposed total offense level of nineteen. As a result, the parties agreed "to recommend a sentence at the lower end of the applicable Guideline Sentencing Range for a total offense level of 19 when combined with [Cueto's] criminal history category as determined by the Court."

Prior to Cueto's sentencing hearing, the Probation Office prepared a presentence investigation report (PSR). The PSR, too, determined that Cueto's base offense level was eight. And, like the plea agreement, the PSR calculated a total offense level by applying a sixteen-level upward adjustment to the base offense level because of Cueto's prior removal after a conviction for a crime of violence, pursuant to § 2L1.2(b)(1)(A) of the guidelines, and a three-level downward adjustment because of Cueto's acceptance of responsibility and cooperation with authorities, pursuant to § 3E1.1(a) and (b). The PSR, however, did not apply the two-level "fast-track" downward adjustment recommended in the plea agreement. Thus, the PSR determined that Cueto's total offense level was twenty-one. Nevertheless, the PSR did provide that "[a]s the defendant has entered into a plea agreement," he would "benefit from a two (2) level adjustment for participating in the Fast-Track Program." After examining Cueto's prior conviction record, the PSR then determined that Cueto's criminal history category was IV. On the basis of Cueto's total offense level of twenty-one and criminal history category of IV, the PSR specified that the recommended Guidelines Sentencing Range applicable to Cueto was fifty-seven to seventy-one months of imprisonment.

Cueto was sentenced on May 10, 2016. At sentencing, the District Court also calculated a base offense level of eight for

Cueto, pursuant to U.S.S.G. § 2L1.2(a). In calculating Cueto's total offense level, the District Court then applied a sixteen-level upward adjustment because of Cueto's prior removal after a conviction for a crime of violence, pursuant to § 2L1.2(b)(1)(A) of the guidelines, and a three-level downward adjustment for acceptance of responsibility, pursuant to § 3E1.1(a) and (b) of the guidelines. The District Court, however, declined to apply the "fast-track" downward adjustment, "because of Mr. Cueto's criminal history." Thus, the District Court set Cueto's total offense level at twenty-one. A total offense level of twenty-one, combined with a criminal history category of IV, yielded a guidelines sentencing range of fifty-seven to seventy-one months' imprisonment. Despite the government's advocating a sentence of forty-six months of imprisonment, the District Court sentenced Cueto to a term of imprisonment of fifty-seven months, and a term of supervised release of three years. The term of supervised release was accompanied by the requirement that Cueto observe "the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court."

Cueto now appeals both the term of imprisonment and the conditions of supervised release.[1]

---

[1] While Cueto's plea agreement contained a waiver of his right to appeal "the judgment and sentence in this case," provided that Cueto was "sentenced in accordance with the terms and conditions set forth in the Sentencing Recommendation provisions of this Plea

## II.

Cueto challenges the term of imprisonment on three grounds: first, that the District Court erred procedurally in not accepting the government's recommendation for a "fast-track" adjustment; second, that the District Court erred procedurally by inadequately explaining the term of imprisonment and by failing to consider certain mitigating factors; and third, that the District Court erred substantively in imposing an unreasonable term of imprisonment. We consider each contention in turn.

### A.

Section 5K3.1 of the guidelines, the "fast-track" provision, provides that "[u]pon motion of the Government, the court <u>may</u> depart downward not more than four levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." (emphasis added). Cueto acknowledges that the word "may" in that provision gives a district court the discretion to determine whether to apply that downward adjustment or not, and thus we review this preserved challenge for abuse of

Agreement," the government acknowledges that this waiver does not bar Cueto's challenges. The government notes that the "Sentencing Recommendation" section of the plea agreement "recommend[ed] a sentence at the lower end" of a guidelines range calculated on the basis of a total offense level of nineteen, while Cueto was sentenced on the basis of a total offense level of twenty-one, and thus the government agrees with Cueto that his waiver is unenforceable.

discretion.  See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir.) (citing United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)(noting that courts of appeals' evaluation of a sentencing court's "judgment calls for abuse of discretion"), cert. denied, 136 S. Ct. 258 (2015)); United States v. Shand, 739 F.3d 714, 716 (2d Cir. 2014) (holding that § 5K3.1 "vests sole discretion to grant departures on Government motions with district court judges.").  But, Cueto argues, the District Court abused its discretion because it first accepted Cueto's guilty plea pursuant to a plea agreement that obligated the government to move for a fast-track adjustment and then declined to apply that adjustment, thereby depriving Cueto of "the benefit of the bargain."

We are not persuaded.  The plea agreement was a bargain struck with the government, in which the government agreed to recommend a two-level downward fast-track adjustment.  And the government did so, stating at sentencing that "the United States stands by the plea agreement" and "recommend[s] a sentence of 46 months."  The plea agreement -- executed pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure -- did not obligate the District Court to sentence the defendant in accordance with the government's recommendations when the District Court accepted Cueto's guilty plea.  See Fed. R. Crim. P. 11(c)(1)(B) (noting that attorneys for the government and the defendant may

- 7 -

agree to "recommend . . . a particular sentence or sentencing range" (emphasis added))".

Cueto separately contends that, given the District Court's apparent concerns about his criminal history, the Magistrate Judge who presided over Cueto's change-of-plea hearing "should have told him" at that hearing "that [the District Court] would not accept [the] agreement." In pressing this contention, Cueto points to a portion of his change-of-plea colloquy where he suggests that the Magistrate Judge "induced the plea by promising the fast-track departure."

The record belies this contention, however. During the exchange Cueto identifies, the record reflects the Magistrate Judge's statement that the Magistrate Judge possessed an "original of [Cueto's] fast track plea agreement, which is being made pursuant to Rule 11(c)(1)(b)." The Magistrate Judge thus accurately described the plea agreement itself, which is entitled a "fast track plea agreement." Nowhere in the portion of the change-of-plea colloquy that Cueto points to did the Magistrate Judge suggest that Cueto was guaranteed the benefit of the two-level fast-track adjustment. In fact, the record shows that the plain terms of the plea agreement reflected the advisory nature of that agreement, and that the Magistrate Judge explained to Cueto at his change-of-plea hearing that "any sentence imposed by the Court is entirely in the discretion of the sentencing Judge" and

thus "that the terms that appear on the plea agreement are only a recommendation and [thus] not mandatory."

## B.

As a fallback, Cueto contends that, even if the District Court properly calculated the guidelines range applicable to him, the District Court erred by failing to articulate its reasons for imposing the term of imprisonment that the District Court imposed. Because Cueto did not make this objection to the District Court, our review is for plain error. United States v. Pérez, 819 F.3d 541, 546 (1st Cir. 2016). "To establish plain error, an appellant must show that (1) an error occurred (2) which was clear or obvious and which not only (3) affected the appellant's substantial rights but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. at 546-47 (citation and modifications omitted). Cueto cannot show plain error here.

We have previously explained that, where, as here, "the court imposes a sentence that comes within the [guidelines sentencing range], the burden of adequate explanation is lightened." Id. at 547 (citation omitted). We have further noted that, in a situation like this one, involving a within-guidelines sentence, "it is sufficient for the sentencing court simply to identify the main factors driving its determination." United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016) (citation omitted).

Here, the record reveals that the District Court emphasized that it "considered the . . . sentencing factors set forth" in 18 U.S.C. § 3553(a), described several aspects of Cueto's biography, and then explained that the sentence the District Court imposed "reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by Mr. Cueto, and addresses the issues of deterrence and punishment." The District Court's explanation thus closely matches the explanation we upheld in Pérez as "sufficient" on plain error review "to satisfy [the] lightened burden" of explaining a within-guidelines sentence. See 819 F.3d at 547.

Cueto does separately contend that the District Court failed to consider certain mitigating factors about his biography, including his "traumatic childhood." But, we have held that the fact that "the district court handed down a harsher sentence than [the defendant] desired does not reveal an inattentiveness" to the mitigating factors the defendant wished the District Court to consider, "but rather that [the District Court] weighed them differently than [the defendant] did." United States v. Butler-Acevedo, 656 F.3d 97, 101 (1st Cir. 2011). Moreover, we must give the District Court's statement that it considered the sentencing factors set forth in § 3553(a) "some weight." United States v. Vega-Salgado, 769 F.3d 100, 105 (1st Cir. 2014).

Here, the "difficult" nature of Cueto's childhood, among other mitigating factors, was brought to the District Court's attention during sentencing, and the District Court later summarized other portions of Cueto's personal history. We thus conclude that the District Court did not commit a clear or obvious error in failing to explain specifically why it did not believe that those mitigating factors merited a below-guidelines sentence. See Butler-Acevedo, 656 F.3d at 101 (noting that district courts are "not required to address each" of the § 3553(a) factors, "one by one, in some sort of rote incantation" (modifications omitted)).

## c.

Finally, Cueto contends that the District Court erred by imposing a term of imprisonment that was substantively unreasonable, particularly given the District Court's departure from the recommendation made by the government. Cueto contends that he preserved this challenge by "challenging the denial of fast-track relief" and thus "request[ing] a lower sentence than the one he received." On that basis, Cueto contends that our review is for abuse of discretion. We need not resolve the question whether Cueto preserved this challenge, however. We have previously explained that the standard of review that applies to a defendant's unpreserved challenge to the substantive reasonableness of his sentence is "somewhat blurred," Ruiz-Huertas, 792 F.3d at 228. Here, as in Ruiz-Huertas, "we need not

- 11 -

resolve this apparent anomaly," for even "[a]ssuming, favorably to the defendant, that the abuse of discretion standard applies, the outcome would be the same." Id.

We further explained in that case that "[a] challenge directed at substantive reasonableness is usually a heavy lift, and reversal is particularly unlikely when the sentence fits within the compass of a properly calculated guideline sentencing range." Id. at 228-29 (citations and modifications omitted). Cueto, who points to nothing in the record that would make the District Court's choice of a sentence at the low end of the range under the sentencing guidelines a substantively unreasonably one, cannot make that heavy lift here.

## III.

Cueto also challenges nine of the standard conditions of supervised release that the District Court imposed. He contends that a number of them are too vague, another is too onerous because it fails to consider his financial circumstances, and yet another violates his Fifth Amendment rights. For support, he cites United States v. Kappes, which concluded that a number of similar conditions failed plain error review. 782 F.3d 828, 844 (7th Cir. 2015). He also contends that, in any event, the District Court failed to provide an adequate explanation as to why these conditions, or at least why all of them, were imposed on him.

The government responds, initially, that, because Cueto is almost certain to be removed upon his release -- and is therefore extremely unlikely to be subjected to the conditions he takes issue with -- his challenge to these conditions of release is not ripe.  We addressed a similar issue in United States v. Medina, 779 F.3d 55, 66-67 (1st Cir. 2015).  There, the defendant, a sex offender, challenged the "District Court's requirement that he submit to penile plethysmograph, or PPG, testing, if the sex offender treatment program he must participate in as a condition of his supervised release requires such testing."  Id. at 64.  The government contended that the challenge was not ripe because the "PPG-testing condition[]" was a "contingent" one, insofar as there was some uncertainty as to whether the defendant would, in fact, be required to undergo that form of testing.  Id. at 66.  We disagreed.  Id. at 67.  We explained that "a challenge to even a contingent supervised release condition" may be "ripe, and 'not hypothetical'" as long as the "judgment explicitly spell[s] out the condition and the defendant challenge[s] 'the . . . condition itself, not its application or enforcement.'"  Id. at 66 (quoting United States v. Davis, 242 F.3d 49, 51 (1st Cir. 2001) (per curiam)).  We further explained that the defendant "was sentenced to thirty months in prison in July of 2013," which meant that, at the time our opinion was issued in March of 2015, the defendant "could be subject to the condition he challenges in the near term,

when he is released from prison and the treatment program commences." Id. at 67. And, in Davis, on which Medina relied, we explained in holding that the defendant's challenge to the supervised release condition at issue was "not hypothetical" that the defendant's "term of supervised release will commence in less than two months," at which point the defendant would "be subject to the challenged condition imposed by the district court." Davis, 242 F.3d at 51.

Here, Cueto still has forty-nine months left in his sentence. Moreover, as the government points out, Cueto conceded in his plea agreement that "he has no legal status in [this country] . . . and will likely be removed from the United States upon completion of his sentence." In fact, the government notes in its briefing to us -- and Cueto does not dispute -- that the "Department of Homeland Security has already lodged a detainer for Cueto's arrest because he is an illegal alien subject to removal and deportation proceedings." The government thus contends that, unlike in Davis and Medina, "it is a matter of conjecture" whether Cueto will be subjected to the standard conditions of supervised to which he objects.

Despite the features of this case that appear to make it different from Medina and Davis, Cueto makes no argument on appeal as to why his challenge to these conditions is ripe. But, even if we were to overlook Cueto's failure in that regard and assume that

his challenge to these conditions is ripe for review, it would fail. As the government points out, Cueto never raised any objections below to the conditions that he now challenges, even though the guidelines themselves "flatly recommend the standard conditions" of supervised release, United States v. Tulloch, 380 F.3d 8, 13 (1st Cir. 2004) (citing U.S.S.G. § 5D1.3(c)); Cueto's plea agreement referenced a term of three years' supervised release as included within the maximum penalty to which Cueto could be sentenced and separately noted that Cueto's sentence "[would] be imposed in accordance with the [g]uidelines"; and the District Court explicitly stated at sentencing that, "[u]pon release from confinement, Mr. Cueto shall be placed on supervised release for a term of three years" and that Cueto "shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court." Thus, Cueto must meet the demanding test imposed by the plain error standard of review, which requires him to show that "(1) an error occurred (2) which was clear or obvious and which not only (3) affected the appellant's substantial rights but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Pérez, 819 F.3d at 546-47; see United States v. Roy, 506 F.3d 28, 30 (1st Cir. 2007) (noting that the plain error test "set[s] a very high threshold and deliberately so"). But, Cueto makes no argument on appeal as to how he can satisfy this

demanding standard, as he contends only that our review must be for abuse of discretion.

Of course, in challenging the conditions as too vague or onerous, Cueto does rely on Kappes. And Kappes found the conditions at issue there invalid even in the event that plain error applied. 782 F.3d at 844. But Cueto makes no argument as to why we must do similarly in considering his challenge to these conditions. And he fails to make any such argument notwithstanding that our own precedent approves a number of the conditions that Cueto now challenges, see United States v. Stergios, 659 F.3d 127, 134 (1st Cir. 2011) (concluding that, should a defendant find his conditions of supervised release, as implemented by the probation officer, "unduly restrictive upon his release, he need only speak with his supervising officer and, if that does not succeed, raise the issue with the district court"); United States v. Padilla, 415 F.3d 211, 214, 221-22 (1st Cir. 2005) (en banc) (rejecting a delegation-based challenge to the authority of a probation officer "to determine the maximum number of [drug] tests to be administered" during the defendant's term of supervised release); rejects another of his challenges for reasons that apply here as well, see United States v. York, 357 F.3d 14, 24-25 (1st Cir. 2004) (rejecting a Fifth Amendment-based challenge to the condition that requires a defendant to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation

officer"), and there is out-of-circuit precedent that, contra Kappes, approves the rest of the challenged conditions, see United States v. Llantada, 815 F.3d 679, 682 (10th Cir. 2016); United States v. Muñoz, 812 F.3d 809, 819 (10th Cir. 2016); United States v. Phillips, 704 F.3d 754, 768 (9th Cir. 2012); United States v. Soltero, 510 F.3d 858, 866-67 (9th Cir. 2007) (per curiam); United States v. Nash, 438 F.3d 1302, 1307 (11th Cir. 2006) (per curiam).

Cueto separately contends that the District Court plainly erred in failing to provide sufficient explanation for its decision to impose the standard conditions of supervised release that he now challenges. We reject this challenge, too. We have already noted that the "[g]uidelines flatly recommend the standard conditions, without qualification[] or prerequisite." Tulloch, 380 F.3d at 13. We further explained in United States v. Garrasteguy, 559 F.3d 34, 42 (1st Cir. 2009), that "[a]ny conditions of supervised release that a sentencing court chooses to impose must, of course, be supported by the record." But, we emphasized, "this requirement can be satisfied without a written or oral explanation of the reasons supporting the condition if we can infer the court's reasoning by comparing what was argued by the parties or contained in the pre-sentence report with what the court did." Id. On appeal, Cueto does not point to any specific condition of supervised release that he contends were unjustified in light of the record before the District Court. [Blue Br. 30]

- 17 -

Thus, we conclude that Cueto cannot show that the District Court plainly erred in providing the level of explanation concerning the imposition of the standard conditions of supervised release that Cueto now challenges.

For these reasons, we reject Cueto's challenge to the nine separate conditions of supervised release to which he objects.

**IV.**

For these reasons, the judgment of the District Court is **affirmed**.