# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1077

_____

United States of America

*Plaintiff - Appellee*

v.

Brendon Janis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: February 19, 2021
Filed: April 27, 2021

_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Brendon Dale Janis of conspiracy to distribute methamphetamine and unlawfully possessing firearms, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 18 U.S.C. § 922(g)(3). The district court[1]

_____

[1]The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

sentenced him to 180 months on the conspiracy charge and 60 months on the firearms charge, to run concurrently. He appeals his conviction and sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Janis believes the district court improperly vouched for the credibility of prosecution witnesses when it explained Federal Rule of Criminal Procedure 35 to the jury. This court reviews jury instructions "for abuse of discretion," affirming "if the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." *United States v. Thomas*, 422 F.3d 665, 668 (8th Cir. 2005). Where there is no objection, this court reviews for plain error, reversing only if the defendant shows error, that was plain, that affected substantial rights, and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Fast Horse*, 747 F.3d 1040, 1041-42 (8th Cir. 2014).

During trial, defense counsel questioned prosecution witnesses about their cooperation with the government, referencing "Rule 35" and saying: "the more information that you give [the prosecution], the bigger the benefit you're going to get;" "the quantity and quality of information you give [the prosecution] results in the recommendation that you get;" "you've been told that you can get up to 50 percent off of [your sentence] with cooperation;" and "the government's there to help you . . . [b]ecause they can reduce your sentence."

After defense counsel finished, the district court instructed the jury:

> You know, it might be helpful. This Rule 35, this is a matter of law. These are Federal Rules of Criminal Procedure. Rule 35 in these cooperation agreements, the United States can but does not have to make a motion under Federal Rule of Criminal Procedure 35 after the cooperation is complete or if the government makes certain decisions about the level of cooperation and its thoroughness, and so on. They

make a motion to the Court, to me, in these cases for a sentencing. The defense has an opportunity to add more information if they want.

And based on the information in front of me and what I see and—you know, after seeing people testify, and later there's a motion. It's entirely up to the judge. There are cases where I've given people time served; they're out the next day or the next week. There are cases where I give very minimal cuts because—for a variety of reasons. Lack of truthfulness, cooperation fails, the information isn't actually useful.

So it's discretionary with every federal judge in a sentencing. This half, it's sort of become a regular matter, I think, across the United States, with full cooperation a 50-percent cut. But there's absolutely no assurance of that. And every case is judged based on the information that's presented to the judge considering the Rule 35.

And so there's a very wide range of discretion as to what the cut would be, if any.

Does that help? All right.

I can't testify; but that's a matter of law, and I can tell you about that matter.

The court then asked if there were any objections to the explanation. Defense counsel requested a side bar:

Defense Counsel: Your Honor, I don't want to contradict here in front of—but isn't it true that the prosecutor also makes a recommendation?

The Court: Nope. Not on a Rule 35. They never tell us what they think the cut should be. I've never seen it.

Defense Counsel: Okay. Fair enough. Fair enough.

The Court: I really never have.

Defense Counsel: Fair enough. I wanted to ask that before we—

The Court: I know that the implication was made in one of your questions earlier. And it's sort of a mysterious process for everybody except prosecutors and judges, and the defense attorneys have a chance to add information. But I—there's never a recommendation.

Defense Counsel: I agree with that, Your Honor. But I think a lot of the defendants' understanding, from a lot of anecdotal evidence over 14 years, comports with what I'm arguing.

The Court: Never seen that on a Rule 35.

Defense Counsel: Thank you, Your Honor.

Defense counsel did not object to the instruction, claim the court improperly vouched for any witnesses, or seek a clarifying instruction or mistrial. Before deliberations, the court gave thorough instructions about witness testimony. *See generally* **Eighth Circuit Manual of Model Jury Instructions (Criminal)**. It told the jury to consider witness motivation for testifying and said the jury could "believe all of a what a witness says, only part of it, or none of it." It instructed the jury that it might have heard testimony from witnesses who pled guilty or received a reduced sentence and that it should decide whether those factors influenced the testimony. It also said that it was up to the jury to decide whether testimony "may have been influenced by a hope of receiving a more lenient sentence" and that "[y]ou may give this testimony whatever weight you think it deserves."

The court's explanation of Rule 35 was accurate and reasonable. Rather than improperly vouching for witness credibility, the explanation clarified any confusion defense counsel may have created. The court did not plainly err. *See, e.g.*, **United States v. Baldenegro-Valdez**, 703 F.3d 1117, 1124 (8th Cir. 2013) (upholding an instruction about witness cooperation because it correctly stated the law and was supported by the evidence).

-4-

## II.

Janis asserts the district court erred by relying on trial testimony in calculating the drug quantity attributable to him for sentencing. "Drug quantity determinations are factual findings, which we review for clear error, applying the preponderance-of-the-evidence standard." *United States v. King*, 898 F.3d 797, 809 (8th Cir. 2018) (internal quotation marks omitted). When "the quantity of drugs was established through witnesses' testimony, the issue becomes one of credibility." *United States v. Quintana*, 340 F.3d 700, 702 (8th Cir. 2003). "It is . . . well established that in sentencing matters a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." *Id*. (internal quotation marks omitted).

At trial, the court concluded that the evidence was sufficient to permit a reasonable jury to find Janis conspired to distribute over 500 grams of meth. And the jury convicted him of a conspiracy involving at least 500 grams. However, the court sentenced Janis for a conspiracy involving 1,500 grams of meth. Janis asserts the court "had an affirmative obligation to put factual findings on the record, rather than merely referring to 'trial testimony' in its calculation." But "it is well-established that the testimony of coconspirators may be sufficiently reliable evidence upon which the district court may base its drug quantity calculation for sentencing purposes." *United States v. Plancarte–Vazquez*, 450 F.3d 848, 852 (8th Cir. 2006). *See United States v. Young*, 689 F.3d 941, 945 (8th Cir. 2012) (noting the district court may rely on trial testimony to determine drug quantity).

Here, the district court explained that its factual findings as to drug quantity were based on trial testimony that it "well remembered." And when the amount of drugs seized does not reflect the scale of drug trafficking, "'the court shall approximate the quantity of the controlled substance' for sentencing purposes." *United States v. Walker*, 688 F.3d 416, 421 (8th Cir. 2012), *quoting* **U.S.S.G. § 2D1.1, cmt. n.12**. *See United States v. Shaw*, 965 F.3d 921, 927 (8th Cir. 2020) ("To determine properly the applicable drug quantity in a conspiracy, a sentencing

court shall approximate the quantity of the controlled substance[s] for sentencing purposes if the amount of drugs seized does not reflect the scale of the offense." (internal quotation marks omitted)).

The district court did not clearly err in calculating the drug quantity attributable to Janis at sentencing.

III.

Janis contends the district court erred in imposing the following standard condition of supervised release:

> If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

Specifically, he argues the condition is vague, ambiguous, and unconstitutionally delegates the judicial function to his probation officer.

This court reviews the imposition of standard conditions, "recommended for supervised release," for an abuse of discretion." *United States v. Sterling*, 959 F.3d 855, 861 (8th Cir. 2020). However, where, as here, a defendant challenges a supervised release condition on constitutional grounds, this court reviews de novo. *United States v. Kelly*, 625 F.3d 516, 520 (8th Cir. 2010). Under 18 U.S.C. § 3583(d), special conditions must: (1) be "reasonably related to five matters: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical or other correctional needs;" (2) "involve no greater deprivation of liberty than is reasonably necessary to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant's correctional needs;" and "be consistent with any

pertinent policy statements issued by the sentencing commission." *Simons*, 614 F.3d at 479 (cleaned up), *quoting* **18 U.S.C. § 3583(d)**.

This court addressed this issue in *United States v. Robertson. See Robertson*, 948 F.3d 912, 920 (8th Cir.), *cert. denied*, 141 S. Ct. 298 (2020). There, the defendant argued the same condition was vague because the term "risk" was not defined by statute and had "wide-ranging meanings." *Id.* Rejecting that argument, this court said:

> Robertson asserts this condition is vague because the term "risk" is undefined by statute and has wide-ranging meanings. But the condition states that Robertson's probation officer will determine whether Robertson poses a risk to a particular person, and only then may he require Robertson to notify that person of the particular risk. Thus, the "scope of this condition can be ascertained with sufficient ease," *Key*, 832 F.3d at 840, because the probation officer will identify and communicate the risk to Robertson before Robertson has a duty to inform another person of that risk, *see United States v. Hull*, 893 F.3d 1221, 1223-34 (10th Cir. 2018) (upholding a similar condition of supervised release). Moreover, if there is genuine confusion about what the condition requires, Robertson "may ask questions of his probation officer, who is statutorily required to instruct [him] . . . as to the conditions specified by the sentencing court." *United States v. Forde*, 664 F.3d 1219, 1224 (8th Cir. 2012) (internal quotation marks omitted).

*Id*. Although the *Robertson* court reviewed the issue for plain error and noted this was "a close question and some circuits have refused to uphold similar risk conditions, *see United States v. Evans*, 883 F.3d 1154, 1163-64 (9th Cir. 2018)," this panel is bound by the holding that "the scope of this condition can be ascertained with sufficient ease." *Id*.

Similarly, the *Robertson* defendant argued the condition was an impermissible delegation of authority. This court disagreed:

We have held a special condition of supervised release is an impermissible delegation of authority "only where the district court gives an affirmative indication that it will not retain ultimate authority over all of the conditions of supervised release." *United States v. Thompson*, 653 F.3d 688, 693 (8th Cir. 2011) (internal quotation marks omitted). Robertson points to nothing in the record to show the district court disclaimed ultimate authority over Robertson's supervision. The court made no affirmative indication it was doing so. Thus, the risk and blood conditions were not unconstitutional delegations of authority.

*Id*. As the *Robertson* court held, the condition is not an impermissible delegation of authority. **Id**. *See **Mader v. United States***, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.").

\* \* \* \* \* \* \*

The judgment is affirmed.

_____