# United States Court of Appeals
## For the First Circuit

No. 21-1388

UNITED STATES OF AMERICA,

Appellee,

v.

AKEEM CRUZ, a/k/a Vybe, a/k/a Mello,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Nos. 21-1428, 21-1429

UNITED STATES OF AMERICA,

Appellee,

v.

TAYLOR LOVELY,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

No. 21-1720

UNITED STATES OF AMERICA,

Appellee,

v.

JEREMIAH MITCHELL, a/k/a Jazz,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

_____

Before

Lynch, Selya, and Howard,
Circuit Judges.

_____

Jamesa J. Drake and Drake Law LLC on brief for appellants
Cruz and Lovely.
Rory A. McNamara and Drake Law LLC son brief for appellant
Mitchell.
Darcie N. McElwee, United States Attorney, and Benjamin M.
Block, Assistant United States Attorney, on brief for appellee.

_____

September 28, 2022

_____

**LYNCH**, **Circuit Judge**.  In these consolidated appeals, appellants challenge Standard Condition of Supervised Release Number 12, arguing that the condition on its face violates the Due Process Clause of the Fifth Amendment on vagueness grounds and Article III of the U.S. Constitution on nondelegation grounds.[1]

Akeem Cruz, Taylor Lovely, and Jeremiah Mitchell ("appellants") respectively pleaded guilty, pursuant to written plea agreements with the government, to (1) one count of conspiracy to possess with intent to distribute cocaine base and more than 100 grams of heroin in violation of 21 U.S.C. §§ 841(b)(1)(B), 846; (2) two counts of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); and (3) one count of conspiracy to distribute and possess with intent to distribute a mixture or substance containing fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846.  Appellants' cases below were before three different district court judges.  These separate prosecutions were consolidated on appeal because they raise the same appellate challenges.

The district court sentenced Cruz to 100 months' imprisonment followed by four years' supervised release; Lovely to

---

[1]   Appellants Cruz and Lovely mistakenly argue that Standard Condition 12 violates not the Fifth Amendment, but the Fourteenth Amendment.

158 months' imprisonment followed by five years' supervised release; and Mitchell to 60 months' imprisonment followed by three months' supervised release.  The district courts also imposed conditions of supervised release on all appellants, including Standard Condition 12.  No appellant objected to the imposition of Standard Condition 12 in the district court.  For the first time on appeal, appellants challenge Standard Condition 12 as unconstitutionally vague and an unconstitutional delegation of judicial authority.

We reject on the merits all of the constitutional challenges made and affirm.

## I.

The following facts, taken from the unobjected to portions of the presentence reports ("PSR"), sentencing hearing transcripts, and appellants' briefs, are not in dispute.

### a. Akeem Cruz

Between 2015-2017, Akeem Cruz participated in a conspiracy to distribute heroin and cocaine base in the Portland, Maine area.  Cruz, who always maintained an independent source of supply, was part of the conspiracy "from inception."  Cruz and his co-conspirators worked independently but "shared trap houses for distribution," "utilized the same primary person as the connection to customers," and steered customers to one another when their individual supply ran low.  When Cruz was incarcerated from

November 2015 to March 2016, his then girlfriend operated his drug business for him. After Cruz was released from prison, he resumed operation of his illegal drug business. Law enforcement conducted controlled purchases from Cruz in 2017 and charged him with federal crimes.

Cruz entered into a written plea agreement with the government in August 2019. Cruz waived his right to appeal the "guilty plea and any other aspect of [his] conviction" and "[a] sentence of imprisonment that does not exceed 120 months." The district court found that Cruz was responsible for a total converted drug weight of over 490 kilograms. At sentencing, the district court determined, without objection, Cruz's total offense level to be 27 and his criminal history category to be IV, resulting in a Guidelines sentencing range of 100 to 125 months' imprisonment. The district court imposed, without objection, a sentence of 100 months' imprisonment followed by four years' supervised release, during which Cruz would be required to comply with certain enumerated conditions, including Standard Condition 12.

Cruz, through counsel, did not object to Standard Condition 12 in the PSR, in his pre-sentencing submissions to the district court, or at his sentencing hearing. For the first time on appeal, Cruz challenges the constitutionality of Standard Condition 12.

**b. Taylor Lovely**

Taylor Lovely participated in two conspiracies to distribute methamphetamine in Maine.

The first conspiracy, in which Lovely conspired to obtain methamphetamine from suppliers in the western United States to sell throughout northern Maine, occurred between approximately January 1, 2017, and about August 30, 2018. Lovely was a mid-level participant in the conspiracy, who "sent and received packages [of methamphetamine], secured additional addresses to receive shipments, and distributed methamphetamines to lower-level distributors." Approximately two kilograms of methamphetamine are associated solely with Lovely's first conspiracy.

The second conspiracy, in which Lovely traveled to Arizona and California to obtain methamphetamine and transport it back to Maine, occurred between approximately July 2018 and May 19, 2019. Lovely assisted in breaking down larger amounts of methamphetamine into smaller quantities for distribution and obtained assets in his name as part of the second conspiracy. In November 2018, Lovely purchased two vehicles with almost $30,000 cash as part of this conspiracy. One of these vehicles was used by co-conspirators to travel to Mexico with a large amount of cash in January 2019. Law enforcement officers searched the other vehicle during a traffic stop in April 2019, and seized nearly $15,000 in cash and a .22 caliber rifle. Though Lovely was not

present at the traffic stop, he "expressed concern" to a co-conspirator about the car's impoundment "because there was a firearm contained in the vehicle." At sentencing, the district court found that it was reasonably foreseeable by Lovely that his co-conspirator was likely to use a firearm.

Lovely entered into a written plea agreement with the government in December 2020. Lovely waived his right to appeal his "guilty plea and any other aspect of [his] conviction" and a "sentence of imprisonment . . . that does not exceed 188 months." At sentencing, the district court determined Lovely's total offense level to be 38 and his criminal history category to be II, resulting in a Guidelines sentencing range of 262 to 327 months' imprisonment. The district court imposed a sentence of 158 months' imprisonment followed by five years' supervised release for each offense, to be served concurrently. The court also imposed conditions of supervised release, including Standard Condition 12.

Lovely, through counsel, did not object to Standard Condition 12 in the PSR, in his pre-sentencing submissions to the district court, or at his sentencing hearing. Lovely now challenges the constitutionality of Standard Condition 12 for the first time on appeal.

c. **Jeremiah Mitchell**

For approximately two years, Jeremiah Mitchell obtained heroin and fentanyl from a Massachusetts supplier for distribution

in Maine.  Mitchell provided Patricia Oliver with heroin and cocaine that Oliver then sold to the public.  On October 4, 2018, law enforcement stopped Oliver and found in her possession fentanyl and nearly $5,000 in cash.  That same day, Mitchell texted a third involved individual, instructing her to dispose of drug trafficking paraphernalia -- including "a coffee grinder with fentanyl residue; bottles of inositol, a known cutting agent; a digital scale with fentanyl residue; and other items such as plastic baggies common in drug-dealing operations" -- in a Scarborough, Maine, hotel room.  Mitchell was arrested later that day when he attempted to meet Oliver to collect the proceeds of her sales.

Mitchell entered into a written plea agreement with the government in March 2021.  Mitchell waived his right to appeal his "guilty plea and any other aspect of [his] conviction" and "[a] sentence of imprisonment that does not exceed 33 months."  The district court attributed over 1,300 grams of fentanyl to Mitchell. At sentencing, the district court determined, without objection, Mitchell's total offense level to be 33 and his criminal history category to be II, resulting in a Guidelines sentencing range of 151 to 188 months' imprisonment.  The district court then applied a three-level decrease with the government's consent, reducing the Guidelines sentencing range to 108 to 135 months' imprisonment. The district court imposed a sentence of 60 months' imprisonment

followed by three years' supervised release. The court also imposed conditions of supervised release, including Standard Condition 12. Mitchell preserved his right to appeal.

Mitchell, through counsel, did not object to Standard Condition 12 in the PSR, in his pre-sentencing submissions to the district court, or at his sentencing hearing. Mitchell now challenges the constitutionality of Standard Condition 12 for the first time on appeal.

## II.

If an objection to a condition of supervised release is preserved, then our review is for abuse of discretion. See United States v. Brown, 235 F.3d 2, 3 (1st Cir. 2000); see also United States v. D'Amario, 59 F. App'x 348, 349 (1st Cir. 2003) (per curiam) ("[W]e ordinarily review a [preserved] challenge to the imposition of conditions of supervised release for abuse of discretion.").

Unpreserved claims challenging the imposition of standard conditions of supervised release are reviewed on appeal under the "demanding . . . plain error standard of review, which requires [appellants] to show that (1) an error occurred (2) which was clear or obvious and which not only (3) affected the appellant's substantial rights but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Cueto-Núñez, 869 F.3d 31, 39 (1st

Cir. 2017) (internal quotation marks omitted). "The appellant must carry the devoir of persuasion as to each of those four elements." United States v. Padilla, 415 F.3d 211, 218 (1st Cir. 2005). Appellants did not preserve their objections to Standard Condition 12 that they attempt to argue on appeal. We hold that there is no error at all and the constitutional challenges fail on the merits. See, e.g., United States v. Antonakopoulos, 399 F.3d 68, 84 (1st Cir. 2005) (finding "no error, much less plain error").

## III.

Appellants challenge Standard Condition 12 as unconstitutionally vague and an unconstitutional delegation of judicial authority to a probation officer.[2] We find no error in the district court's imposition of Standard Condition 12.[3]

**a. Standard Condition 12**

The text of Standard Condition 12 states as follows:

If the probation officer determines that the defendant poses a risk to another person

---

[2] It is clear that the challenges appellants present are facial challenges to Standard Condition 12.

[3] The government does not argue that Cruz's or Lovely's challenges to Standard Condition 12 are barred by the appeal waivers contained in their plea agreements, and we deem any such argument waived. See United States v. Zannino, 895 F.2d 1, 16 (1st Cir. 1990). We express no opinion as to whether either appeal waiver, if not waived, would extend to the challenged standard condition. Because appellants' claims are easily resolved under the plain error standard, we decline to decide whether appellants' failure to object to Standard Condition 12 below constitutes waiver or forfeiture. See United States v. Acevedo-Sueros, 826 F.3d 21, 24 (1st Cir. 2016); see also Cueto-Núñez, 869 F.3d at 39.

- 10 -

(including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

U.S. Sent'g Guidelines Manual § 5D1.3(c)(12) (U.S. Sent'g Comm'n 2016).

The U.S. Sentencing Commission promulgated this language in 2016 pursuant to its congressionally delegated authority to "promulgate . . . general policy statements regarding . . . the conditions of probation and supervised release." 28 U.S.C. § 994(a)(2)(B). The text of Standard Condition 12 that appellants challenge is taken nearly verbatim from the Sentencing Commission's recommended language, changing only each instance of "the defendant" to "you."[4]

A prior version of Standard Condition 12,[5] which the Sentencing Commission promulgated in 1987 shortly after its

---

[4]    The condition that appellants challenge reads:

If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

[5]    The prior 1987 version, not at issue here, provided:

[A]s directed by the probation officer, the defendant shall notify third parties of risks

- 11 -

creation, was repeatedly criticized for alleged constitutional deficiencies. The Seventh Circuit criticized the 1987 provision as "riddled with ambiguities." United States v. Thompson, 777 F.3d 368, 379 (7th Cir. 2015); see also United States v. Evans, 883 F.3d 1154, 1162-64 (9th Cir.) (criticizing the 1987 condition as impermissibly vague because it left appellants "guessing" as to whom they would need to notify and what they would need to tell them), cert. denied, 139 S. Ct. 133 (2018); United States v. Hill, 818 F.3d 342, 345 (7th Cir. 2016) (describing the 1987 condition as "[h]opelessly vague"). In response to this criticism, the Sentencing Commission amended Standard Condition 12 in 2016 to the present version that appellants now challenge. See U.S. Sent'g Guidelines Manual App. C Supp., Amend. 803 (Nov. 1, 2016). The current Standard Condition 12 removes the phrase "personal history or characteristics" and clarifies that the defendant must "comply with [an] instruction" by the probation officer "to notify" an identified person or organization of an identified risk, thereby removing any guesswork as to when the defendant must act.

---

that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

U.S. Sent'g Guidelines Manual § 5B1.4(a)(13) (U.S. Sent'g Comm'n 1987).

Numerous circuit courts have since upheld the constitutionality of Standard Condition 12 in its current form. The Fifth Circuit upheld Standard Condition 12 against a delegation challenge because the condition "only allows the probation officer to direct when, where, and to whom the defendant must give notice" -- "not unilaterally decide whether the defendant is subject to the condition." United States v. Mejia-Banegas, 32 F.4th 450, 452 (5th Cir. 2022). The Eighth Circuit upheld Standard Condition 12 against a vagueness challenge because the condition states that the defendant must notify a person of a particular risk only once the probation officer has determined that the defendant poses a risk to such person, and against a delegation challenge because there was "nothing in the record to show the district court disclaimed ultimate authority over [the defendant's] supervision." United States v. Janis, 995 F.3d 647, 653 (8th Cir.), cert. denied, 142 S. Ct. 483 (2021); see also United States v. Robertson, 948 F.3d 912, 919-20 (8th Cir.), cert. denied, 141 S. Ct. 298 (2020). The Ninth Circuit upheld Standard Condition 12 against a vagueness challenge because the risks referenced in the condition are "limited to the specific risks posed by the defendant's criminal record," and the probation officer has "limited discretion." United States v. Gibson, 998 F.3d 415, 423 (9th Cir. 2021) (internal quotation marks omitted). The Tenth Circuit upheld Standard Condition 12 against a vagueness challenge because the

- 13 -

condition "clearly and specifically states that [the defendant] must provide notice when required to do so by his probation officer," and against a delegation challenge because "the district court cabined the probation department's discretion." United States v. Hull, 893 F.3d 1221, 1224-25 (10th Cir. 2018). The Eleventh Circuit upheld Standard Condition 12 against a delegation challenge because the condition does "not permit the probation officer to unilaterally decide whether [the defendant] 'shall' do something." United States v. Porter, 842 F. App'x 547, 548 (11th Cir. 2021) (per curiam) (citation omitted); see also United States v. Nash, 438 F.3d 1302 (11th Cir. 2006) (upholding the pre-2016 version of Standard Condition 12).[6]

**b. Appellants' Challenge to Standard Condition 12**

Despite the Sentencing Commission's 2016 amendment of Standard Condition 12 to address vagueness concerns and the Courts of Appeals that have upheld the Condition's constitutionality, appellants nonetheless argue that Standard Condition 12 is unconstitutionally vague and an unconstitutional delegation of judicial authority.

---

[6] In as applied attacks considering the nature of the underlying criminal offense, some decisions have vacated and remanded for further consideration of Standard Condition 12. See United States v. Boles, 914 F.3d 95, 112 (2d Cir. 2019); United States v. Cabral, 926 F.3d 687, 698 (10th Cir. 2019).

- 14 -

Before discussing appellants' constitutional challenges, we outline the general law as to a district court's authority to impose conditions of supervised release. There is no challenge in this case that the district courts exceeded that authority.

A district court may impose any condition of supervised release that "it considers to be appropriate" as long as the condition (1) is "reasonably related" to the nature and circumstances of the offense and the history and characteristics of the defendant, and to various objectives including deterring criminal conduct, protecting the public from further crimes, and providing needed training, medical care, or effective correctional treatment, 18 U.S.C. § 3583(d)(1); (2) involves "no greater deprivation of liberty than is reasonably necessary" to deter criminal conduct and protect the public, id. § 3583(d)(2); and (3) "is consistent with any pertinent policy statements issued by the Sentencing Commission," id. § 3583(d)(3). See United States v. Garrasteguy, 559 F.3d 34, 41-42 (1st Cir. 2009). Conditions of supervised release "must . . . be supported by the record." Id. at 42. "[T]his requirement can be satisfied without a written or oral explanation of the reasons supporting the condition if [the court of appeals] can infer the [district] court's reasoning by comparing what was argued by the parties or contained in the pre-sentence report with what the [district] court did." Id.

### i. Vagueness

Appellants argue that Standard Condition 12 is unconstitutionally vague because it "gives no guidance on what type of risks; how much risk; how to determine those risks; which third parties; or any other information that can allow the condition to be applied uniformly" and thus "fails to adequately apprise defendant[s] of what [they] must do to comply with the law."

Some courts have held that a condition of supervised release violates due process where it "either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application." United States v. Lee, 315 F.3d 206, 214 (3d Cir. 2003) (citation omitted). Even were we to apply that standard, Standard Condition 12 easily passes muster.

We hold, consonant with other circuits that have considered this question, see Janis, 995 F.3d at 653; Gibson, 998 F.3d at 423; Hull, 893 F.3d at 1224-25, that Standard Condition 12 is not unconstitutionally vague. A "commonsense" and contextual reading of Standard Condition 12 plainly provides that the probation officer determines the nature of the risk appellants pose and to whom appellants must give warning of said risk by virtue of their criminal record. See United States v. Gallo, 20 F.3d 7, 12 (1st Cir. 1994) (explaining that conditions of probation

must be read "in a commonsense way"). This directive is unambiguous. Appellants need not guess as to the scope of Standard Condition 12; they simply must follow the instructions of their probation officer. See Janis, 995 F.3d at 653; Gibson, 998 F.3d at 423; Hull, 893 F.3d at 1224. Standard Condition 12's context makes clear that the "risk" is defined as that posed by appellants' criminal record. See § 5D1.3(b)(1)(A) (discretionary conditions of supervised release, such as Standard Condition 12, may be imposed where such conditions are reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant"); see also Gibson 998 F.3d at 422; Hull, 893 F.3d at 1226. The probation officer's discretion is thus limited as to when Standard Condition 12 should be triggered -- risks unrelated to a probationer's criminal record are plainly outside the scope of the provision -- all while promoting judicial efficiency because district court judges cannot be expected to write a condition that addresses every possible risk scenario.

### ii. Delegation

Appellants challenge Standard Condition 12 as an unconstitutional delegation of judicial authority to probation officers, arguing that it "offers no intelligible standards on which risks warrant notification, and to whom," leaving probation

officers with "sole authority to determine whether the risk-notification provision must be followed and when."

Article III of the U.S. Constitution vests responsibility for resolving cases and controversies in the federal courts. "[S]eparation of powers forbids courts from delegating their Article III responsibilities." United States v. Meléndez-Santana, 353 F.3d 93, 101 (1st Cir. 2003). Article III courts may use "nonjudicial officers to support judicial functions, as long as that judicial officer retains and exercises ultimate responsibility." Bucci v. United States, 662 F.3d 18, 35 (1st Cir. 2011) (quoting United States v. Allen, 312 F.3d 512, 515-16 (1st Cir. 2002) (internal quotation marks omitted)). For example, courts may delegate "administrative details" to a probation officer. Id. at 36.

We hold, consonant with other circuits that have considered this question, see Mejia-Banegas, 32 F.4th at 452; Janis, 995 F.3d at 653; Hull, 893 F.3d at 1225-26; Porter, 842 F. App'x at 548-49, that Standard Condition 12 does not unconstitutionally delegate judicial authority to a probation officer. When the probation department identifies a risk by applying the criteria set forth by the district court, it has no discretion as to whether appellants must give notice pursuant to Standard Condition 12. See Hull, 893 F.3d at 1226. The probation officer is tasked simply with directing appellants when, where,

and to whom notice must be given.  See Nash, 438 F.3d at 1306; Janis, 995 F.3d at 653.  "That limited scope of authority neither leaves to the probation officer the 'final say' on whether to impose a condition of supervised release nor implicates a significant deprivation of liberty."  Mejia-Banegas, 32 F.4th at 452.

**IV.**

Affirmed.