RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0170p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 22-5567

GERALD LYNN CAMPBELL,

*Defendant-Appellant.*

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:21-cr-00005-1—Charles Edward Atchley, Jr., District Judge.

Decided and Filed: August 10, 2023

Before: GIBBONS, READLER, and DAVIS, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Dana C. Hansen Chavis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

─────────────────

**OPINION**

─────────────────

CHAD A. READLER, Circuit Judge. Gerald Lynn Campbell brandished a pistol and told a group of laborers that he had a bullet for each of them. Following an indictment, Campbell pleaded guilty to being a felon in possession of a firearm. The district court sentenced him to fifteen years' imprisonment, concluding that Campbell's prior convictions for robbery and drug offenses triggered the Armed Career Criminal Act's mandatory minimum. Campbell appealed, challenging his sentence. We affirm.

**I.**

A group of construction workers were performing road repairs in Chattanooga, Tennessee. Gerald Lynn Campbell approached the group in his vehicle. When he arrived, he asked who had voted for Donald Trump in the recent presidential election. Seemingly unhappy with the responses he received, Campbell brandished a firearm. He told the laborers that he "had a bullet for each one of them." Campbell then drove away, eventually parking his truck not far from the construction site. When responding officers found the vehicle, they also discovered Campbell sitting in his vehicle with a semi-automatic pistol in his lap.

A grand jury indicted Campbell for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Campbell pleaded guilty. At the time of Campbell's offense, being a felon in possession of a firearm typically carried a maximum penalty of ten years' imprisonment. *See* 18 U.S.C. § 924(a)(2) (2021). The Armed Career Criminal Act, or ACCA, however, mandates a 15-year minimum sentence for a defendant with "three previous convictions" for "a violent felony or a serious drug offense," each committed on "occasions different from another." 18 U.S.C. § 924(e)(1). With respect to Campbell, the potential predicate offenses the district court considered were: (1) an August 1985 Tennessee robbery; (2) an April 1987 Tennessee aggravated assault; (3) an August 1992 Tennessee drug trafficking offense; (4) a December 1992 Virginia drug trafficking offense; and (5) a March 1993 Virginia drug trafficking offense.

Campbell objected on multiple grounds. Among them, he argued that Tennessee robbery is not a predicate offense, that the drug offenses were not committed on different "occasions," and that the Fifth and Sixth Amendments require that the different-occasion issue be decided by a jury. Campbell also challenged one of the Eastern District of Tennessee's standard supervised release conditions. The condition states that if Campbell's probation officer determined Campbell posed a "risk" to another, the probation officer could require Campbell to notify the person about the risk. E.D. Tenn. L.R. 83.10(c)(12). Campbell objected on the grounds that the provision was unconstitutionally vague.

The district court overruled Campbell's objections. It sentenced him to 180 months' imprisonment, ACCA's mandatory minimum, relying on the conviction for Tennessee robbery and the three drug offenses as predicates. Campbell timely appealed.

**II.**

A. The Armed Career Criminal Act triggers an enhanced sentence for felonious possession of a firearm when a criminal defendant has three or more prior "violent felony" or "serious drug offense" convictions committed on different "occasions." 18 U.S.C. § 924(e)(1). Congress has defined "violent felony" for us. Under the statute's "elements" clause, a violent felony is a crime punishable by imprisonment for more than one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). We utilize the so-called categorical approach to determine whether an offense satisfies that clause. *United States v. Smith*, 70 F.4th 348, 354 (6th Cir. 2023). Under that approach, we ask whether the generic offense "necessarily" involves such force. *See id.* The offense also must have a mens rea greater than recklessness. *United States v. White*, 58 F.4th 889, 895 (6th Cir. 2023) (citing *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (plurality)). We review challenges to whether an offense is a violent felony and whether offenses were committed on separate occasions de novo. *United States v. Buie*, 960 F.3d 767, 770 (6th Cir 2020); *United States v. Southers*, 866 F.3d 364, 369 (6th Cir. 2017).

Before the district court, the government's position was that Campbell's aggravated assault conviction was categorically a violent felony, satisfying the ACCA predicate offense requirements. The district court did not reach the issue, however, and the government does not ask us to do so now. That leaves the robbery and drug offenses as potential predicate crimes.

1. We begin with Tennessee robbery. Tennessee defines "robbery" as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). We have repeatedly considered that offense categorically a violent felony. That is so, we have explained, because Tennessee robbery requires the use or threat of physical force with the requisite knowing or purposeful mens rea. *United States v.*

*Mitchell*, 743 F.3d 1054, 1060 (6th Cir. 2014); *see also Southers*, 866 F.3d at 367; *United States v. Belcher*, 40 F.4th 430, 431 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 606 (2023).

Campbell responds with two intervening Supreme Court decisions he says require a new approach. According to Campbell, those cases—*Elonis v. United States*, 575 U.S. 723 (2015), and *Borden v. United States*, 141 S. Ct. 1817 (2021)—instruct that ACCA's definition of violent felony excludes offenses that are triggered when a defendant threatens physical force negligently. And, Campbell adds, Tennessee robbery sweeps in negligent threats of force, citing *State v. Witherspoon*, 648 S.W.2d 279 (Tenn. Crim. App. 1983), and *Sloan v. State*, 491 S.W.2d 858 (Tenn. Crim. App. 1972). But here again, our precedent forecloses Campbell's argument. *See Belcher*, 40 F.4th at 432 (referencing *Witherspoon*, 648 S.W.2d at 281, and *Sloan*, 491 S.W.2d at 861). Throughout the "long history" of Tennessee's robbery statute, "not once" has a Tennessee court construed the fear element to encompass instances where a defendant negligently caused the victim fear. *Id.* at 431–32; *see also United States v. Hubbard*, No. 21-6219, 2023 WL 319604, at *2 (6th Cir. Jan. 19, 2023).

Changing gears, Campbell argues that Tennessee robbery stretches beyond threats of physical force and includes threatening to falsely accuse the victim of sodomy. Campbell hangs his hat on a case that pre-dates the Civil War, *Britt v. State*, 26 Tenn. 45 (1846). This argument too is a familiar one. *See Hubbard*, 2023 WL 319604, at *3. In an earlier case, we described *Britt* as holding that "fear constituting an element of the crime is a fear of present personal peril from violence offered or impending." *Id.* (citing *Britt*, 26 Tenn. at 46). Although *Britt* mused that robbery could include threatening to prosecute one for sodomy, no subsequent Tennessee case appears to have ever picked up the proposition. *See id.*

2. Campbell next turns our attention to his drug offenses. He challenges the district court's conclusion that those offenses were committed on three separate "occasions," making them three ACCA predicate offenses. The occasions element springs from the statute's text. *See* 18 U.S.C. § 924(e)(1) (offenses must be committed "on occasions different from one another"). A multi-factor inquiry guides our analysis. *United States v. Williams*, 39 F.4th 342, 350 (6th Cir. 2022) (citing *Wooden v. United States*, 142 S. Ct. 1063, 1070–71 (2022)). Those factors include the timing, the locations, the character, and the relationship of the offenses. *Id.* (citing *Wooden*,

142 S. Ct. at 1071).  Substantial time and distance gaps will generally indicate different offense occasions.  *Wooden*, 142 S. Ct. at 1071.  On the other hand, offenses with a "common scheme" are more likely to be the same occasion.  *Id.*  In many instances, however, our analysis can be limited to inquiries like whether the offenses were committed a "day or more apart" or at "significant" distances, factors that can singularly decide the question.  *See id.* (citations omitted).

That is the case here.  The offenses at issue are a Chattanooga drug trafficking offense in August 1992, a Norfolk drug trafficking offense in December 1992, and another Norfolk drug trafficking offense from March 1993.  Months separate each of the offenses—far more than the "day" of separation the Supreme Court used as a benchmark in *Wooden*.  142 S. Ct. at 1071; *see also Williams*, 39 F.4th at 350 (robberies separated by "at least six days" were separate occasions).  And the first two offenses are both remote in time as well as in proximity too:  eight hundred miles as the bird flies separated the Tennessee offense from those in Virginia.  *See Wooden*, 142 S. Ct. at 1071.

Campbell characterizes the offenses as sharing a common "purpose" (trafficking drugs) because the Tennessee federal court considered the Virginia drug trafficking offenses as "relevant conduct" during Campbell's sentencing.  But the Guidelines' relevant conduct differs from *Wooden*'s § 924 "occasions" test.  *Compare* U.S.S.G. § 1B1.3 cmt. n.5(b)(ii) (defining relevant conduct to include "ongoing series of offenses"), *with Wooden*, 142 S. Ct. at 1069 (defining "occasion" as a single "event, occurrence, happening, or episode"); *see also United States v. Cogdill*, No. 22-5603, 2023 WL 4030069, at *2 (6th Cir. June 15, 2023) (rejecting the same argument).  Campbell's view—that all offenses with the purpose of "trafficking" drugs occur on the same occasion—would seemingly obviate the statute's text.  *See* 18 U.S.C. § 924(e)(1) (indicating that "three" "drug offense[s]" can be three ACCA predicates).

Campbell also invokes the rule of lenity, summoning Justice Gorsuch's *Wooden* concurrence.  In Justice Gorsuch's view, when "reasonable minds could differ" regarding whether offenses were committed on multiple occasions, the rule of lenity demands a judgment in the defendant's favor.  *Wooden*, 142 S. Ct. at 1081 (Gorsuch, J., concurring).  That view, however, seemingly is not a universal one.  *Cf. id.* at 1075 (Kavanaugh, J., concurring)

("[T]he rule of lenity rarely if ever comes into play."); *Biden v. Nebraska*, No. 22-506, slip op. at 2 (U.S. June 30, 2023) (Barrett, J., concurring) (noting that the rule of lenity is not a "strong-form" substantive canon). Either way, after considering offenses separated by months and two with many miles between them, no reasonable minds here could diverge on the occasion question. *See Williams*, 39 F.4th at 350 & n.4.

3. Lastly, Campbell argues that the Fifth and Sixth Amendments require that the government charge the separateness of the ACCA predicates in an indictment and prove the supporting facts to a jury. *See Wooden*, 142 S. Ct. at 1087 n.7 (Gorsuch, J., concurring) (noting that a "constitutional question simmers"). The United States, we note, likewise "agrees that a jury should find (or a defendant should admit) that ACCA predicates were committed on occasions different from one another." Yet as the government also points out, Campbell's argument is precluded by precedent. At present, in our circuit, a sentencing judge may decide whether prior offenses were committed on different occasions. *Williams*, 39 F.4th at 351; *Belcher*, 40 F.4th at 432; *see also United States v. Cook*, No. 22-5056, 2022 WL 4684595, at *2 (6th Cir. Oct. 3, 2022) (explaining that on this point "*Wooden* didn't disrupt our prior caselaw"). In any event, Campbell's argument does not have much purchase here. After all, he admitted that he committed the ACCA predicates on four different dates, each separated by months or years. *See Belcher*, 40 F.4th at 432 (rejecting defendant's similar argument in part because defendant admitted that at least three of his prior offenses were separated by at least six years).

B.1. That leaves Campbell's challenge to one of the Eastern District of Tennessee's standard supervised release conditions. We review the imposition of the condition for an abuse of discretion. *United States v. Widmer*, 785 F.3d 200, 203 (6th Cir. 2015).

First, some history on the condition in question. District courts have discretion to impose supervised release conditions pursuant to 18 U.S.C. § 3563(b)(22). The United States Sentencing Commission promulgates recommended "standard" conditions. *See* U.S.S.G. § 5D1.3(c); 28 U.S.C. § 994(a)(2)(B). One is the risk notification condition, which has seen a transformation. The Commission's prior version stated that a probation officer could direct a defendant to notify "third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics." *See United States v. Thompson*, 777 F.3d 368, 379

(7th Cir. 2015). Finding "personal history" and "characteristics" impermissibly vague, a few circuits (including ours) directed district courts to modify the condition. *See id.* at 379, 382; *United States v. Evans*, 883 F.3d 1154, 1162–64 (9th Cir. 2018); *United States v. Sexton*, 719 F. App'x 483, 484–85 (6th Cir. 2017) (per curiam). In response, the Commission updated the language to the current text, which the Eastern District of Tennessee adopted. *See* U.S. Sent'g Guidelines Manual supp. to app. C, amend. 803 (U.S. Sent'g Comm'n 2016); U.S.S.G. § 5D1.3(c)(12); E.D. Tenn. L.R. 83.10(c)(12).

The risk notification condition now instructs that if a probation officer determines that a defendant poses "a risk" to "another person," the probation officer may require the defendant to notify the person about the risk, and the defendant "shall" comply. U.S.S.G. § 5D1.3(c)(12); E.D. Tenn. L.R. 83.10(c)(12). This standard condition is not uncommon in the district courts. *See United States v. Cruz*, 49 F.4th 646, 652–53 (1st Cir. 2022) (collecting cases). According to Campbell, however, the new language is still impermissibly vague such that it violates the due process clause. A prior panel of our Court has upheld the condition's new language, albeit in an unpublished opinion. *See United States v. Marcum*, No. 20-5280, 2021 WL 1038272, at *4 (6th Cir. Jan. 20, 2021) (per curiam) (order). Other circuits have rejected similar challenges. *See Cruz*, 49 F.4th at 653; *United States v. Janis*, 995 F.3d 647, 653 (8th Cir. 2021); *United States v. Gibson*, 998 F.3d 415, 423–24 (9th Cir. 2021); *United States v. Hull*, 893 F.3d 1221, 1223 (10th Cir. 2018). *But see United States v. Boles*, 914 F.3d 95, 111–12 (2d Cir. 2019) (holding that the condition was impermissibly vague). We uphold the language again today.

True, as Campbell notes, the due process clause forbids vague supervised release conditions. *United States v. Shultz*, 733 F.3d 616, 622 (6th Cir. 2013). At the same time, a condition need not "spell out every one of its applications." *Id.* Instead, it must "fix an ascertainable standard of guilt." *Id.* (cleaned up). That is the case here. The prior version of the condition was fatally flawed because the district court provided no clarification regarding what was meant by "risks," "personal history," or "characteristics." *Sexton*, 719 F. App'x at 484–85. But the latter two categories have been removed from the condition. *See* E.D. Tenn. L.R. 83.10(c)(12). And the district court clarified the scope of "risk" in the challenged condition; the "risk" referred to Campbell's "past criminal history"—a definition that clears the "ascertainable"

bar. *See Marcum*, 2021 WL 1038272, at \*4; *see also Gibson*, 998 F.3d at 423 (rejecting vagueness challenge because "risk" was cabined to those posed by the "defendant's criminal record" (emphasis omitted)).

2. Campbell has one last salvo. He argues that the condition was an unconstitutional delegation of judicial authority. Because Campbell did not object before the district court, we review the issue for plain error. *See* Fed. R. Crim. P. 52(b). That requires Campbell to show (1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) affected the fairness, integrity, or public reputation of his judicial proceedings. *United States v. Johns*, 65 F.4th 891, 893 (6th Cir. 2023). He falters from the start.

Federal law affords probation officers extensive authority. *See* 18 U.S.C. § 3603; *United States v. Logins*, 503 F. App'x 345, 349 (6th Cir. 2012). That authority, however, has its limits. Article III draws a line in the sand: imposing punishment upon a defendant convicted of a crime, a core judicial function, cannot be delegated. *See Whitehead v. United States*, 155 F.2d 460, 462 (6th Cir. 1946); *United States v. Henderson*, 29 F.4th 273, 276 (5th Cir. 2022); *see also Ex Parte United States*, 242 U.S. 27, 41–42 (1916). Here the record indicates that the court reserved the "ultimate authority" to determine the condition's contours. *See United States v. Thompson*, 653 F.3d 688, 693 (8th Cir. 2011); *Cruz*, 49 F.4th at 654; *Janis*, 995 F.3d at 653; *see also United States v. Kidd*, No. 12-5420, 2013 WL 870263, at \*2 (6th Cir. Mar. 11, 2013) (per curiam) (citation omitted). In particular, the court explained that if there were "any questions or concerns," the court would "take [the issue] up" to "resolve" it. *See Cruz*, 49 F.4th at 654 (rejecting a delegation challenge to an identical condition); *Janis*, 995 F.3d at 653 (same); *Henderson*, 29 F.4th at 276 (same). That was enough to satisfy any delegation concerns under our precedent.

\*   \*   \*   \*   \*

We affirm the district court's judgment.