NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0390n.06

Case No. 24-5089

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 18, 2024
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA )
  Plaintiff-Appellee, )
)
v. )
)
RASHAD LINDSAY )
  Defendant-Appellant. )
)
)

) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR
) THE EASTERN DISTRICT OF
) TENNESSEE
)
) OPINION

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

SUTTON, Chief Judge. Rashad Lindsay challenges the conditions of his supervised release. We affirm.

In October 2013, Rashad Lindsay pleaded guilty to one count of conspiring to counterfeit bills, three counts of passing counterfeit bills, and one count of possessing counterfeit bills with intent to defraud. The district court sentenced Lindsay to 32 months of prison and three years of supervised release.

Two conditions of Lindsay's release require drug testing. The first is a mandatory condition that requires Lindsay to "submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court." R.64 at 4; 18 U.S.C. § 3583(d). The second is a special condition that requires Lindsay to "participate in a program of testing and/or treatment for drug and/or alcohol abuse, as directed by the probation

officer, until such time as the defendant is released from the program by the probation officer." R.64 at 6.

At sentencing, Lindsay objected to one aspect of the special condition, arguing that, "[w]hile drug testing is appropriate, . . . the condition should be modified to include a schedule." R.55 at 2.  He acknowledged that testing may be "random" but claimed that the court should "set a number of tests" "as a ceiling."  R.73 at 8.  The district court declined to cap the number of drug tests at that time.  But it told Lindsay that he could renew his request later and offer "a good reason as to why" he "no longer should have to be drug tested or if it's become onerous."  R.73 at 10. Lindsay appeals, challenging some of the conditions of his supervised release.

A challenge to a condition of supervised release usually receives deferential review. *United States v. Shultz*, 733 F.3d 616, 619 (6th Cir. 2013).  Given a trial court's "front-row seat at the proceedings and its sentencing experience, we generally respect its imposition of supervised-release conditions in the absence of an abuse of discretion."  *Id.*; *see United States v. Campbell*, 77 F.4th 424, 430–31 (6th Cir. 2023).  If, as is the case here, a defendant challenges a trial court's legal authority to impose a condition, however, we take a fresh look at it.  *United States v. Carpenter*, 702 F.3d 882, 884 (6th Cir. 2012).

*Frequency of drug testing.*  Lindsay first challenges the district court's refusal to cap the number of drug tests required by his substance-abuse treatment program.  As he sees it, this condition flouts the requirement that a trial judge may not delegate sentencing decisions to a parole officer.

We accept the premise of Lindsay's argument but not its conclusion.  Article III prohibits courts from delegating the "core judicial function" of "imposing punishment" to the executive branch.  *Campbell*, 77 F.4th at 432.  A district court may direct the probation office to implement

a release condition so long as it "reserve[s] the ultimate authority to determine the condition's contours." *Id.* (quotation omitted). We examine these contours by reading the condition "in a commonsense way" and in the ever-informative context of each sentencing hearing. *Shultz*, 733 F.3d at 622–24 (quotation omitted).

The problem for Lindsay is that he is not the first defendant to raise this challenge. In *Carpenter*, we rejected a delegation challenge to a special condition requiring the defendant to "participate in a program of testing and treatment for substance abuse, as directed by the probation officer." 702 F.3d at 884. A district court, we held, fulfills its statutory and Article III duties so long as the court "decide[s] whether treatment is required." *Id.* at 886 (quotation omitted). After that, it need not specify the precise number of tests. *Id.*

Consistent with *Carpenter*, the district court in this instance fulfilled its duty by deciding that Lindsay needed treatment. It imposed a condition that Lindsay "shall participate in a program" to treat his substance-abuse problems. R.64 at 6. Article III required no more of the district court.

Trying to alter this conclusion, Lindsay points to several circuit court decisions that have required caps on the number of drug tests when the district court imposes them as part of a *mandatory* drug-testing condition. *See United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998); *United States v. Padilla*, 415 F.3d 211, 220 (1st Cir. 2005) (en banc); *United States v. Stephens*, 424 F.3d 876, 883 (9th Cir. 2005). But the claimed parallels between that situation and this one do not hold up. This case turns on a special condition, not a mandatory one. That distinction makes all the difference, as we explained in *Carpenter*. *See* 702 F.3d at 886. Mandatory conditions of release are imposed by statute. When a court sentences a defendant to a term of supervised release in that setting, it must "order . . . that the defendant . . . submit to" a number of drug tests "as determined by the court." 18 U.S.C. § 3583(d). Each of the cited cases

3

holds that delegating this decision to a probation officer violates the statute, not Article III. In contrast, a district court need not require that a defendant undertake drug-abuse treatment. *Cf.* U.S.S.G. § 5D1.3(d)(4). But when it chooses to do so through a special condition of release, it may give a probation officer discretion about the *implementation* of that treatment program without violating § 3583(d).

Even so, Lindsay adds, his special condition would permit limitless tests, including for non-treatment purposes. But Lindsay's reading of the provision is not a fair one, much less a commonsense one. We interpreted a nearly identical *Carpenter* provision as applying only to drug or alcohol treatment. 702 F.3d at 885; U.S.S.G. § 5D1.3(d)(4). Lindsay's provision is best read as limited to treatment related to substance abuse.

Keep in mind that this affirmance does not set Lindsay's condition in stone. If the number of substance-abuse tests poses a hardship for Lindsay, the district court told Lindsay that he may seek relief from the probation office or the court to modify the program. *See United States v. Zobel*, 696 F.3d 558, 575 (6th Cir. 2012).

*Alcohol-abuse treatment.* Lindsay argues that the district court improperly delegated the decision of whether to subject Lindsay to alcohol-abuse treatment. Because Lindsay failed to raise this issue below, we review it for plain error. He thus must show a clear error that affected his substantial rights as well as the fairness and integrity of the proceedings. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

The gist of Lindsay's argument is that the district court should have decided precisely what type of substance-abuse treatment is required—and in this instance should have spelled out whether and why alcohol-abuse treatment would be included in his program. Had he made the argument below, the district court might have explained why it generally applies these conditions

to all forms of substance abuse, or it might have limited the application of the program. It is hard to know. At all events, Lindsay offers no caselaw to justify this requirement. In reality, we have affirmed similar conditions requiring participation in treatment programs for generic "substance abuse." *See, e.g.*, *Carpenter*, 702 F.3d at 884.

During sentencing, it is true, the government and Lindsay's counsel repeatedly referred only to Lindsay's drug problems, and the court recommended a drug-abuse treatment program during Lindsay's incarceration. So far as we can tell, it is also true, no mention was made of any alcohol-abuse problem. But it is hardly unusual for a substance-abuse program to cover drug and alcohol treatment, even though the individual to date has shown only a proclivity for one type of abuse. *See, e.g.*, *United States v. Vigil*, 989 F.3d 406, 409–11 (5th Cir. 2021) (per curiam); *United States v. Cooper*, 171 F.3d 582, 587 (8th Cir. 1999); *United States v. Carter*, 159 F.3d 397, 400–01 (9th Cir. 1998); *cf. United States v. Richards*, 958 F.3d 961, 966 (10th Cir. 2020) ("[P]reventing further use of drugs and alcohol will help ensure Defendant does not trade one vice for another.").

Nor at any rate has Lindsay shown how a generic substance-abuse program would impose any significant burdens on him because it covered alcohol-abuse treatment. No plain error occurred.

Lindsay insists that plain-error review should not apply because his request for a drug-testing cap adequately placed the district court on notice of all delegation issues with respect to this condition. But the reality that a defendant has challenged one condition of release on delegation grounds does not preserve all possible delegation challenges to other conditions. *Campbell* reviewed the defendant's preserved challenges for an abuse of discretion and reviewed his unpreserved delegation challenge for plain error. 77 F.4th at 429–32. Lindsay never raised a

5

delegation challenge to this condition in the district court. All the district court heard was a reference to an unspecified Ninth Circuit rule about the frequency of drug testing and the potential transportation problems for defendants needing to travel for drug testing. This did not suffice to put the district court on notice of this new argument on appeal.

Once again, this is not the end of the road. Nothing prevents Lindsay, to repeat, from seeking relief from the probation office or district court if the treatment program becomes onerous.

*Inpatient treatment.* Lindsay argues that the district court needed to specify whether the required treatment program was inpatient or outpatient. Because Lindsay also failed to raise this claim below, we review it for plain error as well.

The standard of review dooms Lindsay's claim. At least two circuit courts have taken different sides on this issue. *Compare United States v. Aguilar-Cerda*, 27 F.4th 1093, 1095–96 (5th Cir. 2022), *with United States v. Matta*, 777 F.3d 116, 122–23 (2d Cir. 2015). The Sixth Circuit has not yet taken a stand, and we see no need to do so in the context of this unpreserved claim. In either setting, a circuit split "precludes a finding of plain error." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (quotation omitted); *see also United States v. Accardi*, 669 F.3d 340, 348 (D.C. Cir. 2012).

We affirm.